IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DANA MILLER<br>11665 Center Village Road<br>Galena, Ohio 43021<br><br>Plaintiff,<br><br>-vs.-<br><br>COUNTRYWIDE HOME LOANS, INC.<br>c/o Statutory Agent CT Corporation System<br>1300 East 9th Street<br>Cleveland, Ohio 44114<br><br>AND<br><br>BANK OF AMERICA, CORP.<br>c/o Statutory Agent CT Corporation System<br>1300 East 9th Street<br>Cleveland, Ohio 44114<br><br>AND<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.<br>c/o Statutory Agent CT Corporation System<br>1300 East 9th Street<br>Cleveland, Ohio 44114<br><br>Defendants. | CASE NO.: 2:11 CV 393<br><br>JUDGE:<br><br>MAGISTRATE JUDGE:<br><br>MAGISTRATE JUDGE KEMP<br><br>Civil Complaint<br><br>JURY DEMAND ENDORSED HEREON |

2011 MAY -6 P 1:11

Now comes Plaintiff, Dana Miller ("Plaintiff") by and through undersigned counsel, and for his complaint against Defendants, Countrywide Home Loans, Inc. and Bank of America Corporation, states as follows:

**PARTIES**

1

1. At all relevant times, Plaintiff was a resident of Delaware County, Ohio, with a principal place of residence at 11665 Center Village Road, Galena, Ohio 43201 ("the Property").

2. Defendant Countrywide Home Loans, Inc. ("Countrywide") is a New York corporation with substantial business ties to Delaware County, Ohio.

3. Countrywide is headquartered in Calabasas, California and has significant business ties to Delaware County, Ohio.

4. Defendant Bank of America Corporation ("Bank of America") is a Delaware corporation with substantial business ties to Delaware County, Ohio.

5. Bank of America is headquartered in Charlotte, North Carolina and has significant business ties to Delaware County, Ohio.

6. In 2008 Bank of America and Countrywide officially merged.

7. Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a Delaware corporation with significant ties to Delaware County, Ohio.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction to hear this matter pursuant to 15 U.S.C. 1692 § 801, et seq. Defendants' conduct giving rise to this complaint occurred in Delaware County, Ohio, and is in violation of the federal Fair Debt Collection Practices Act, the Fair Credit Reporting Act, the common law, among other things.

9. This Court is the proper venue for this matter because Defendants' conduct giving rise to this complaint occurred in Delaware County, Ohio.

## FACTUAL BACKGROUND

10. Countrywide, through its counsel, foreclosed on Plaintiff and the Property by way of a lawsuit filed in the Delaware County Court of Common Pleas carrying case number 08

2

CV E 08 1170. ("The Foreclosure Action"). The Foreclosure Action was captioned *Countrywide Homes Loans, Inc. v. Dana J. Miller, et al.* Prior to The Foreclosure Action, Plaintiff had agreed to pay Countrywide, pursuant to a 30 year note and mortgage, a copy of which were both attached to Countrywide's complaint in The Foreclosure Action. At some point in time, Plaintiff pursued Countrywide to permit him to enter into a loan modification so that he could continue to faithfully pay on the note and mortgage covering the Property. At some point in time, Plaintiff pursued Countrywide to permit him to enter into a loan modification so that he could continue to faithfully pay on the note and mortgage covering the Property.

11. This civil complaint is not an attack on the state court's judgment granting Countrywide a foreclosure. Plaintiff is not complaining to this Court about the decision the state court made in granting Countrywide a foreclosure. Instead, this complaint alleges independent acts of fraud, among other things, against Defendants. Whether the underlying case in the Delaware Court of Common Pleas was a foreclosure case, or a personal injury case, for example, Defendants have engaged in **independent** acts of fraud and deceit that are actionable in this Court.

12. Countrywide attached to the complaint an alleged true and accurate copy of the original mortgage covering the Property. ("the Mortgage"). The Mortgage purported that MERS was the mortgagee.

13. Countrywide also attached to the complaint a copy of the original note covering the Property. ("the Note"). Plaintiff executed the Note in favor of Countrywide.

14. There was nothing attached to the complaint demonstrating that Countrywide had any interest, legal or otherwise, in the Mortgage.

3

15. On March 2, 2009, Countrywide filed a motion for summary judgment.

16. Along with its motion for summary judgment, Countrywide filed an affidavit in support. ("the Affidavit"). Mark Bishop, the alleged "1st Vice President" of Countrywide, attested that he had "personal knowledge" of Plaintiff's account, and that he had "examined the loan account of Dana J. Miller and that said account is under [his] supervision, [and] that there is presently due a principal balance of $268,681.63[.]"

17. Upon information and belief, the Affidavit is inaccurate in many respects. Upon information and belief, Mr. Bishop did not have "personal knowledge" of Plaintiff's account, nor did he "examine" Mr. Miller's account in any respect before declaring Plaintiff to be in default.

18. By giving Mr. Bishop the title of "1st Vice President" Countrywide meant to mislead the Plaintiff and Court in The Foreclosure Action into believing he was a person with the knowledge and authority to make the statements he did in the Affidavit, and thus not question the validity of it. Instead of being called a "1st Vice President," Mr. Bishop should realistically been given the title, "Affidavit Signer."

19. Countrywide knew when it filed the Affidavit that it was false, and it provided it to the court in the Foreclosure Action and to Plaintiff anyway, so that the court in the Foreclosure Action and Plaintiff would rely upon it. Countrywide also provided the Affidavit to the court in The Foreclosure Action so that it could improperly foreclose on Plaintiff and the Property.

20. On March 25, 2009, through its counsel, Countrywide filed a response to the various motions that Plaintiff had filed in The Foreclosure Action, as well as an alleged

4

assignment ("the Assignment") purporting to assign the Mortgage from Defendant MERS to Countrywide.

21. In its response, Countrywide's counsel stated that "Defendant's [Plaintiff in this case] motion sounds like a late night television infomercial decrying the modern lending system," and his filings are a "militia-style response."[1]

22. The Assignment that Countrywide presented to the court in The Foreclosure Action was a sham and a fraud.

23. Kimberly Dawson, interestingly also a "1st VP" or MERS as nominee for Countrywide, executed the Assignment, which purported to assign the Mortgage from MERS, as nominee for Countrywide, to ***Countrywide***. Notwithstanding the obvious impracticability of assigning the Mortgage essentially from Countrywide to Countrywide, upon information and belief, there is nothing in existence appointing Ms. Dawson as a "1st VP" of anything, let alone the "1st VP" of MERS.

24. Upon information and belief, Ms. Dawson received no wages from MERS, no W2 from MERS, no salary from MERS, no bonus from MERS – nothing from MERS. Ms. Dawson was not an employee or officer of MERS, and thus she had no authority, actual or otherwise, to assign the Mortgage from any entity, to any entity.

25. Countrywide knew the Assignment was false and untrue when it provided it to Plaintiff and the court in The Foreclosure Action. Countrywide hoped Plaintiff and the court in The Foreclosure Action would rely on its false and untrue Assignment so that it could foreclose on Plaintiff and the Property.

---

[1] Notwithstanding that there is not a single "late night television infomercial decrying the modern lending system" in existence, anywhere, the Court overruled all of Plaintiff's alleged "militia-style" motions. The Court likely did not deny Plaintiff's motions because they resembled an infomercial or because they were "militia-style," however.

5

26. Likewise, Defendant MERS knew or should have known the Assignment was false and untrue. MERS also intended for Plaintiff and the court in The Foreclosure Action to rely on the Assignment so it could assist Countrywide in foreclosing on Plaintiff and the Property.

27. The entire Foreclosure Action noted was contaminated by the fraud of Defendants. As a result of that fraud, Defendants were permitted, under color of law, to take the Property away from Plaintiff.

28. On April 20, 2009, the court in the Foreclosure Action granted Countrywide's motion for summary judgment, in express reliance on the faulty Affidavit and Assignment.

29. As a result of the judgment Countrywide obtained against Plaintiff, the Property sold at sheriff's auction on August 25, 2010.

30. The court in The Foreclosure Action confirmed the sale on November 24, 2010.

31. On April 7, 2011, Countrywide filed a praecipe for writ of possession.

32. Plaintiff now faces imminent eviction from the Property.

33. Throughout the period of time The Foreclosure Action was pending in the common pleas court, and well before that time, Plaintiff believed Countrywide was working with him in good faith to enter into a loan modification.

34. Countrywide requested from Plaintiff the same financial paperwork over and over again. Countrywide would always, like clockwork, respond to the submission of these documents by advising Plaintiff he had forgotten certain documents or otherwise did not provide them. This was simply untrue.

35. In response, Plaintiff would make every effort to comply with Countrywide's allegations that he did not provide the required financial documentation.

36. In reality, Countrywide at all relevant times had all of the financial documentation from Plaintiff that was necessary to make a determination of whether or not to offer him a loan modification. Countrywide's ulterior motive was always to string Plaintiff along so that it could ultimately foreclose on the Property.

37. The efforts on the part of Countrywide and by extension Bank of America to lead Plaintiff to believe he would be approved for a loan modification, with the ulterior motive of foreclosing on the Property, were in bad faith.

### COUNT 1: Emergency Temporary and Permanent Injunctive Relief

38. Plaintiff incorporates the foregoing paragraphs herein by reference.

39. This is an action for emergency temporary and permanent injunctive relief on an emergency basis and without notice.

40. The specific facts set forth in this complaint demonstrate that unless a temporary injunction against the eviction is granted, Plaintiff will suffer the irreparable injury, loss, and damage of the loss of his home, along with his family.[2]

41. Given the specific acts of fraud, deceit and chicanery Defendants have engaged in, Plaintiff's likelihood of success on the merits is probable.

42. As a direct and proximate result of Defendants' conduct as described herein, Plaintiff requests that the Court issue an emergency, *ex parte*, temporary injunction which enjoins any party from making any effort to evict Plaintiff from the Property.

### COUNT II: Promissory Estoppel

43. Plaintiff incorporates the foregoing paragraphs as if fully rewritten herein.

---

[2] See Plaintiff's motion for emergency temporary injunction, filed contemporaneously with this complaint.

44. Countrywide provided Plaintiff with clear, unambiguous promises that Plaintiff would be approved for a loan modification.

45. Plaintiff reasonably and foreseeably relied on Countrywide's promises.

46. Plaintiff has been injured as a result of his reasonable and foreseeable reliance.

47. As a direct and proximate result of Countrywide's breach of its promise and its conduct as described herein, Plaintiff has been damaged in an amount in excess of $75,000.00.

### COUNT III: Violation of The Ohio Consumer Sales Practices Act

48. Plaintiff incorporates the foregoing paragraphs herein by reference.

49. Defendants have engaged in a pattern and practice of unfair, deceptive, and unconscionable acts in violation of R.C. §§ 1345.02, 1345.03, and/or 1345.031 by, among other things, proceeding to pursue a foreclosure action against Plaintiff.

50. Such acts and practices have been previously determined by a court in Ohio to violate the Consumer Sales Practices Act, R.C. §§ 1345.01 et seq. Defendants committed said violations after such decisions were available for public inspection pursuant to R.C. § 1345.05(A)(3).

51. As a direct and proximate result of Defendants' conduct as described herein, Plaintiff has been damaged in an amount in excess of $75,000.00.

### COUNT IV: Common Law Fraud

52. Plaintiff incorporates the foregoing paragraphs herein by reference.

53. Defendants (a) made representations to the Delaware County Court of Common Pleas and to Plaintiff herein; (b) which were material to the proceedings between the parties as described above; (c) which were made with knowledge of their falsity and with utter disregard for whether they were true or false; (d) which were made with the intent of

8

misleading Plaintiff and the Delaware County Court of Common Pleas into relying upon them; and (e) on which Plaintiff and the Delaware County Court of Common Pleas justifiably relied.

54. **Specifically**, in order to meet the heightened pleading standard of "fraud," among other things, Defendants provided the false and fraudulent Affidavit to Plaintiff and the Delaware County Court of Common Pleas with the hope that the court and Plaintiff would reasonably rely upon it, which they did. Defendants also fraudulently led Plaintiff to believe he would be approved for a loan modification with the ulterior motive of foreclosing on the Property.

55. **Also specifically**, in order to meet the heightened pleading standard of "fraud," among other things, Defendants provided the false and fraudulent Assignment to Plaintiff and the Delaware County Court of Common Pleas with the hope that the court and Plaintiff would reasonably rely upon it, which they did.

56. As a direct and proximate result of Defendants' conduct as described herein, Plaintiff has been damaged in an amount in excess of $75,000.00.

### COUNT V: Breach of the Covenant of Good Faith and Fair Dealing

57. Plaintiff incorporates the foregoing paragraphs herein by reference.

58. Defendants were obligated by either contract or common law to act in good faith and to deal fairly with Plaintiff. Plaintiff and Defendants enjoyed a special relationship.

59. The purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance.

60. Defendants have breached this duty owed to Plaintiff by, among other things, failing to approve him for a loan modification.

61. As a direct and proximate result of Defendants' conduct as described herein, Plaintiff has been damaged in an amount in excess of $75,000.00.

### COUNT VI: Violation of the Fair Debt Collection Practices Act

62. Plaintiff incorporates the foregoing paragraphs herein by reference.

63. Plaintiff is a "consumer" as contemplated by 15 U.S.C. 1692 § 803(1).

64. Defendants are "creditors" as contemplated by 15 U.S.C. 1692 § 803(4).

65. Defendants are "debt collectors" as contemplated by 15 U.S.C. 1692 § 803(6).

66. As described above, Defendants engaged in false and misleading representations, in violation of 15 U.S.C. 1692 § 807.

67. As described above, Defendants engaged in unfair practices, in violation of 15 U.S.C. 1692 § 808.

68. As a direct and proximate result of Defendants' conduct as describe herein, Plaintiff has been damaged in an amount in excess of $75,000.00.

### COUNT VII: Violation of the Fair Credit Reporting Act

69. Plaintiff incorporates the foregoing paragraphs herein by reference.

70. Defendants qualified as a provider of information to the credit reporting agencies, including but not limited to, Experion, Equifax, and TransUnion, under the federal Fair Credit Reporting Act.

71. Defendants wrongfully, improperly, and illegally reported negative information as to Plaintiff to one or more credit reporting agencies resulting in Plaintiff having negative information on his credit reports and the lowering of his FICO score.

72. Pursuant to 15 U.S.C. 1681(s)(2)(b), Plaintiff is entitled to maintain a private cause of action against Defendants for an award of damages in an amount in excess of $75,000.00.

## COUNT VIII: Bad Faith

73. Plaintiff incorporates the foregoing paragraphs herein by reference.

74. Plaintiff and Defendants entered into an agreement.

75. Defendants as a result owed a duty of good faith and fair dealing to Plaintiff.

76. Defendants refused to abide by the terms of any agreement they made with Plaintiff, in bad faith.

77. Defendants had no reasonable basis not to permit Plaintiff a loan modification.

78. Defendants' failure to abide by the terms of the agreement has resulted from Defendants' bad faith, in breach of the covenant of good faith and fair dealing.

79. As a direct and proximate result of Defendants' actions, Plaintiffs have been damaged in an amount in excess of $75,000.00.

## Count IX: Abuse of Process

80. Plaintiff incorporates the foregoing paragraphs herein by reference.

81. In filing The Foreclosure Action against Plaintiff, and by providing Plaintiff and the court in The Foreclosure Action with the Affidavit and the Assignment, Defendants set in motion a legal proceeding within a purported proper forum and with probable cause.

82. Defendants' actions as described herein in relation to The Foreclosure Action against Plaintiff have perverted the proceeding in order to accomplish an ulterior purpose for which the proceeding was not designed – that ulterior purpose being to wrongfully foreclose on the Property.

83. As a direct and proximate result of Defendants' conduct as described herein, Plaintiff has been damaged in an amount in excess of $75,000.00.

11

### Count X: Civil Conspiracy

84. Plaintiff incorporates the foregoing paragraphs herein by reference.

85. Defendants engaged in a malicious combination involving at least two people or entities.

86. Defendants' malicious combination caused injury to Plaintiff.

87. There exists an unlawful act independent from the conspiracy itself.

88. As a direct and proximate result of Defendants' conduct as described herein, Plaintiff has been damaged in an amount in excess of $75,000.00.

### Count XI: Violation of Ohio's "Baby RICO" Statute

89. Plaintiff incorporates the foregoing paragraphs herein by reference.

90. Defendants acted in violation of Baby RICO by engaging in and participating in Plaintiff's affairs through a pattern of corrupt activity and collection of unlawful debt.

91. As a direct and proximate result of Defendants' conduct as described herein, Plaintiff has been damaged in an amount in excess of $75,000.00.

### COUNT XII: Negligent Supervision

92. Plaintiffs incorporate the foregoing paragraphs herein by reference.

93. Defendants had full and complete knowledge that its employees and agents were engaged in a widespread fraud, including the conduct of Bishop and Dawson.

94. After full and complete knowledge of this fraud, Defendants have not taken any remedial steps to stop such practices.

95. Such tortious conduct is reckless and negligent.

96. As a direct and proximate result of Defendants' conduct as described herein, Plaintiff has been damaged in an amount in excess of $75,000.00.

## COUNT XIII: Violation of RESPA

97. Plaintiff incorporates the foregoing paragraphs herein by reference.

98. As a mortgage lender, Defendants are subject to the provisions of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq.

99. In violation of 12 U.S.C. § 2607 and in connection with the mortgage loan to Plaintiff, Defendants accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed.

100. In addition, Defendants have failed to provide all relevant accounting documents to Plaintiff, especially those related to third party payments.

101. As a direct and proximate result of Defendants' conduct as described herein, Plaintiff has been damaged in an amount in excess of $75,000.00. In addition, Plaintiff is entitled to an amount equal to three times of charges paid by Plaintiff as "settlement services" pursuant to 12 U.S.C. § 2607(d)(2).

## COUNT XIV: Wrongful Eviction

102. Plaintiff incorporates the foregoing paragraphs herein by reference.

103. Defendants have ousted Plaintiff from his residence illegally, and without following the procedures required for a forcible entry and detainer action under Ohio Revised Code § 1923.

104. As a direct and proximate result of Defendants' conduct as described herein, Plaintiff has been damaged in an amount in excess of $75,000.00.

## Prayer for Relief

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

(a) For compensatory damages in excess of $75,000.00;

(b) For punitive damages in an amount to be determined at trial;

(c) A civil penalty of not less than $25,000.00 for each separate and appropriate violation described herein, and pursuant to R.C. § 1345.07(D);

(d) A civil penalty for each and every violation of the FCRA, FDCPA;

(e) For reasonable and/or statutory attorney's fees;

(f) For an order finding that Defendants are jointly and severally liable for all monetary amounts awarded; and

(g) For any other relief this Court deems appropriate.

Respectfully submitted,

**JUMP LEGAL GROUP, LLC**

JOHN SHERROD (0078598)
2130 Arlington Avenue
Columbus, Ohio 43221
614.481.7231
866.561.7315 fax
jsherrod@jumplegal.com

*Attorney for Plaintiffs*

## Jury Demand

Plaintiff demands a trial by jury.

John Sherrod