UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANA J. MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:11-CV-393 |
| | ) | District Judge Sargus |
| vs. | ) | |
| | ) | |
| COUNTRYWIDE HOME LOANS, INC., | ) | |
| BANK OF AMERICA CORP., and | ) | |
| MORTGAGE ELECTRONIC | ) | |
| REGISTRATION SYSTEMS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
## MOTION FOR TEMPORARY RESTRAINING ORDER

Defendants Countrywide Home Loans, Inc., Bank of America Corp., and Mortgage

Electronic Registration Systems, Inc. (collectively, "Defendants"), respectfully submit this

memorandum in opposition to Plaintiff's "Motion for an Emergency Temporary Injunction of

Foreclosure Eviction."

Scott A. King (0037582), Trial Attorney
**Thompson Hine LLP**
2000 Courthouse Plaza, N.E.
Dayton, Ohio  45402
(937) 443-6560
(937) 443-6830 (fax)
scott.king@thompsonhine.com

Tammy L. Adkins (*pro hac vice*)
**MᴄGᴜɪʀᴇWᴏᴏᴅs LLP**
77 W. Wacker Drive, Ste. 4100
Chicago, Illinois 60601-1815
(312) 849-8100
(312) 849-3690 (fax)
tadkins@mcguirewoods.com

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 3

I.     THE ANTI-INJUNCTION ACT PROHIBITS PLAINTIFF'S PROPOSED
INJUNCTIVE RELIEF.............................................................................................. 3

The Anti-Injunction Act, 28 U.S.C. § 2283, expressly precludes Plaintiff's
proposed injunctive relief.

*Smith v. Encore Credit Corp.*, 623 F. Supp. 2d 910 (N.D. Ohio 2008)
*Atl. Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281 (1970)

II.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER
PLAINTIFF'S COMPLAINT AND PLAINTIFF'S CLAIM FOR INJUNCTIVE
RELIEF ..................................................................................................................... 4

    A.    *Rooker-Feldman* Prohibits Plaintiff's Proposed Injunctive Relief ...................... 4

*Rooker-Feldman* prohibits Plaintiff's reinstatement in the property following the
state-court foreclosure judgment, sale, and eviction.

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005)
*Givens v. Homecomings Fin.*, 278 Fed. App'x 607 (6th Cir. 2008)

    B.    Plaintiff's Claims Are Not Independent from the State-Court Foreclosure
Judgment ................................................................................................... 6

Plaintiff has not alleged any claim independent from those resolved by the state
court judgment, and the *Rooker-Feldman* doctrine prevents the Court from
exercising jurisdiction over Plaintiff's Complaint.

*McCormick v. Braverman*, 451 F.3d 382 (6th Cir. 2006)
*In re Smith*, 349 Fed. App'x. 12 (6th Cir. 2009)

III.    PLAINTIFF'S CLAIMS ARE BARRED BY *RES JUDICATA*........................................ 9

Plaintiff's claims not expressly raised before the state foreclosure court are nevertheless
barred by *res judicata* because an existing final judgment or decree between the parties to
litigation is conclusive as to all claims which were *or might have been* litigated in a first
lawsuit.

*Miller v. Countrywide Home Loans*, 747 F. Supp. 2d 947 (S.D. Ohio 2010)
*Grava v. Parkman Township*, 653 N.E.2d 226 (Ohio 1995)
*Nickoli v. Erie MetroParks*, 923 N.E.2d 588 (Ohio 2010)
*Givens v. Homecomings Fin.*, 278 Fed. App'x 607 (6th Cir. 2008)
*Hines v. Franklin S&L*, No. 1:09-cv-914, 2011 U.S. Dist. LEXIS 24500 (S.D. Ohio Jan.
31, 2011)

IV.    PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF ...................................... 13

Plaintiff has failed to show any of the requirements for obtaining preliminary injunctive relief.

11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948 (2d ed. 1995)
*Hadix v. Caruso*, No. 4:92-CV-110, 2007 U.S. Dist. LEXIS 66530 (W.D. Mich. Sept. 10, 2007)
*Harding v. City of Toledo*, 433 F. Supp. 2d 867 (N.D. Ohio 2006)
*Chabad v. City of Cincinnati*, 363 F.3d 427 (6th Cir. 2004)
*Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620 (6th Cir. 2000)

A.      The Defendants Lack the Power to Grant Plaintiff's Extraordinary Request, Because the Property Was Assigned to a Third Party, Fannie Mae ...................................................................................................... 14

Fannie Mae, not Defendants, has possession of the property, and Fannie Mae is not before the Court.

Fed. R. Civ. P. 65(a)(1)
*Parker v. Ryan*, 960 F.2d 543, 545 (5th Cir. 1992)

B.      Plaintiff Cannot Show Any Likelihood of Success on the Merits ...................... 14

Plaintiff cannot show that he is likely to prevail on any of his claims, nor does he show that if he *could* prevail on any of those claims, it would entitle him to present possession of the property in question.

*Hadix v. Caruso*, Case No. 4:92-CV-110, 2007 U.S. Dist. LEXIS 66530 (W.D. Mich. Sept. 10, 2007)
13-65 *Moore's Federal Practice* – Civil § 65.22(1)(c) (3d ed. 2011)

        1.      The Promissory Estoppel Claim Is Statutorily Barred and Wholly Conclusory ............................................................................. 16

*Olympic Holding Co., LLC v. ACE Ltd.*, 122 Ohio St. 3d 89 (2009)
*Interstate Gas Supply, Inc. v. Calex, Corp.*, 10th Dist. App. No. 04AP-980, 2006-Ohio-638 (Feb. 14, 2006)
*U.S. Surety Co. v. KeyCorp*, No. 1:05CV2337, 2007 U.S. Dist. LEXIS 58996 (N.D. Ohio Aug. 13, 2007).
*Lamkin v. First Community Bank*, 10th Dist. No. 00AP-935, 2001 Ohio App. LEXIS 1450 (Mar. 29, 2001).

        2.      The Ohio Consumer Sales Practices Act Does Not Apply to Home Loans or Modifications .......................................................................... 17

Ohio Revised Code 1345.01(A)
*Reagans v. Mountainhigh Coachworks, Inc.*, 117 Ohio St. 3d 22, 881 N.E.2d 245

        3.      The Common Law Fraud Claim Fails .................................................... 17

*Roark v. Rydell*, 2007-Ohio-6873

*Walburn v. Lockheed Martin Corp.*, 431 F.3d 966 (6th Cir. 2005)
*Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993)
*Masek v. Marroulis*, 2007-Ohio-6159
*Morrow v. Reminger & Reminger Co. LPA*, 2009-Ohio-2665
*DeBrosse v. Jamison*, 1992 Ohio App. LEXIS 131 (Jan. 14, 1992)
*Hershey v. Edelman*, 2010-Ohio-1992
*Dawes v. BAC Home Loans Servicing LP*, Case No. 1:10-cv-02637,
Magistrate Report (N.D. Ohio April 27, 2011)

4.  The Good Faith and Fair Dealing Claim Fails Because It Is Not an
    Independent Cause of Action, It Is Barred by the Statute of Frauds,
    and Plaintiff's Breach Precludes a Claim for Breach of Contract ........... 19

    *MERS v. Mosley*, 8th Dist. App. No. 93170, 2010-Ohio-2886
    *City of Marion v. Hoffman*, 3d Dist. App. No. 9-10-23, 2010-Ohio-4821

5.  The FDCPA Claim Fails Because Plaintiff Has Waived It, the
    Defendants Are Not Debt Collectors, the Claim is Time-Barred,
    and It Was Already Dismissed with Prejudice ........................................ 19

    15 U.S.C. § 1692k
    *Perry v. Stewart Title Co.*, 756 F.2d 1197 (5th Cir. 1985)
    *Wells Fargo Bank, N.A. v. Favino*, No. 1:10-cv-571, 2011 U.S. Dist.
    LEXIS 35618 (N.D. Ohio Mar. 31, 2011)
    *Martin v. Select Portfolio Serving Holding Corp.*, No. 1:05-cv-273, 2008
    U.S. Dist. LEXIS 16088 (S.D. Ohio Mar. 3, 2008)

6.  The FCRA Claim Fails Because Plaintiff Did Not Comply with the
    Requirements of the Statute .................................................................. 21

    15 U.S.C. 1681s-2(a)
    15 USC. 1681s-2(b)
    *Bridge v. Ocwen Fed. Bank*, 669 F. Supp. 2d 853 (N.D. Ohio 2009)

7.  Plaintiff's Bad Faith Claim Fails Because There Is No "Bad Faith"
    Tort ...................................................................................................... 21

    *Infocision Mgmt. Corp. v. Found. for Moral Law Inc.*, Case No. 5:08-cv-
    1412, 2009 U.S. Dist. LEXIS 65867 (N.D. Ohio July 27, 2009)

8.  Plaintiff's Abuse of Process Claim Fails to Allege Ulterior Purpose ...... 21

    *Aames Capital Corp. v. Wells*, 2002-Ohio-1498
    *Dawes v. BAC Home Loans Servicing LP*, Case No. 1:10-cv-02637,
    Magistrate Report (N.D. Ohio April 27, 2011)
    *Yaklevich v. Kemp, Schaeffer & Rowe Co.*, 68 Ohio St. 3d 294 (1994)

9.  Plaintiff Fails to Adequately Allege Civil Conspiracy ............................ 22

    *Collins v. Nat'l City Bank*, 2003-Ohio-6893

*Roark v. Rydell*, 2007-Ohio-6873
*Masek v. Marroulis*, 2007-Ohio-6159

    10.    Plaintiff Does Not and Cannot Allege the Elements of a "Baby RICO" Claim, Including the Existence of an "Unlawful Debt." ............. 22

Ohio Rev. Code 2329.31(I)
Ohio Rev. Code 2923.31
*Patton v. Wilson*, 2003-Ohio-3379
*Arnold v. Petland, Inc.*, No. 2:07-cv-01307, 2009 U.S. Dist. LEXIS 31377 (S.D. Ohio Mar. 26, 2009)
*Pethtel v. Wash. County Sheriff's Office*, 2007 U.S. Dist. LEXIS 60105 (S.D. Ohio Aug. 16, 2007)
*Herakovic v. Catholic Diocese*, 2005-Ohio-5985
*VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696 (6th Cir. 2000)
*Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481 (6th Cir. 1989)
*Universal Coach, Inc. v. New York City Transit Auth.*, 90 Ohio App. 3d 284 (1993)

    11.    The Negligent Supervision Claim Fails ................................................... 25

*Strock v. Pressnell*, 38 Ohio St. 3d 207, 217 (Ohio 1988)
*Masek v. Marroulis*, 2007-Ohio-6159
*Morrow v. Reminger & Reminger Co. LPA*, 2009-Ohio-2665

    12.    The RESPA Claim Is Time-Barred ........................................................ 25

12 U.S.C. § 2601
12 U.S.C. § 2602(3)
12 U.S.C. § 2607
12 U.S.C. § 2614

    13.    The Wrongful Eviction Claim Fails, Because the Defendants Did Not Evict Plaintiff, and It Otherwise Fails to Allege Anything Improper ................................................................................................. 26

Ohio Revised Code § 1923

C.    Plaintiff Cannot Show Irreparable Harm .............................................................. 26

*Harding v. City of Toledo*, 433 F. Supp. 2d 867, 873-74 (N.D. Ohio 2006)
*Hadix v. Caruso*, Case No. 4:92-CV-110, 2007 U.S. Dist. LEXIS 66530, (W.D. Mich. Sept. 10, 2007)

D.    The Remaining Factors Weigh Against Injunctive Relief .................................... 27

## PRELIMINARY STATEMENT

With this action, Plaintiff is challenging his state court mortgage foreclosure for the third time.  In the state court, he actually raised many of the issues he raises in the instant federal court complaint, and he had ample opportunity to raise all of them in the state court.  The state court granted summary judgment against him.  *See* Exhibit A, attached hereto.  Prior to the subsequent sheriff's sale, Plaintiff filed a motion for emergency injunction and restraining order in the state court (*see* Exhibit B),[1] which was denied.  At the same time, Plaintiff proceeded to seek relief in federal court, where he twice requested and was twice denied a preliminary injunction to prevent the sale of his property, defendants' motions to dismiss were granted, and his claims were dismissed.  *See* Exhibits C, D, E, F, and G.  Now, after the sale of the property, its assignment to the Federal National Mortgage Association ("Fannie Mae") – who is not before this Court – and his subsequent eviction by Fannie Mae (*see* Exhibits H, I and J), Plaintiff yet again seeks temporary injunctive relief, this time seeking not to maintain the status quo, but actually to reverse his eviction in spite of the foreclosure judgment against him.

Plaintiff is not entitled to temporary or preliminary injunctive relief, and his motion should be denied, for numerous reasons.[2]  As noted by the Court in its Conference Memorandum and Order preceding the instant briefing, the property is now owned by Fannie Mae.  Therefore, "the currently-named Defendants do not own or possess the property, and [are] not in the position to relinquish the property to Plaintiff pursuant to a TRO issued by this Court."  (Dkt. 14.)  Quite simply, nobody with the power to do as Plaintiff wishes is before the Court.

---

[1]   The Court may take judicial notice of court filings in Plaintiff's prior actions relating to the foreclosure.  *See Hall v. Miller*, No. 2:06-CV-01, 2006 U.S. Dist. LEXIS 41860, *3 n.2 (S.D. Ohio June 22, 2006) ("The Court may, and shall, take judicial notice of court records); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) ("Federal courts may take judicial notice of proceedings in other courts of record").
[2]   Although styled as a "Motion for Emergency Temporary Injunction," Plaintiff's motion seeks a preliminary injunction.  (Pl.'s Mem. at 9, 11.)

But even in the absence of this fatal flaw with Plaintiff's request, no temporary or preliminary injunctive relief should issue.[3] First, the Anti-Injunction Act prohibits Plaintiff's attempt to have this Court interfere with state court proceedings concerning his foreclosure and eviction. Second, the Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine because Plaintiff seeks to have this Court act as an appellate court on claims that are not independent from his state court foreclosure action, but rather, were considered and rejected by the state court in rendering its judgment. Third, *all* of his claims are barred by *res judicata* because they either were or could have been raised in the state court action.

Further, Plaintiff has not and cannot show that he satisfies the requirements for obtaining a mandatory injunction. As noted above, the property is literally out of the Defendants' hands. Moreover, plaintiff cannot demonstrate a likelihood of success on the merits on his claims, or any claims that would entitle him to the injunctive relief he seeks. Indeed, in order to make such a showing in support of injunctive relief, Plaintiff would have to have a legal right in need of protection, yet he does not have a present legal right to possession of the property, nor is he asking this Court to make any ultimate finding of such entitlement. He has failed at the threshold to link the requested temporary relief to a legal right he seeks to enforce under any of his claims. Each claim is addressed separately below, and all are fundamentally flawed as a matter of law.

In addition, Plaintiff cannot establish that he would suffer irreparable injury in the absence of an injunction. His complaint and motion at times appear to be premised on *preventing* his eviction, but his eviction has *already occurred*, as noted in the Court's Conference

---

[3]     Although Plaintiff's motion does not distinguish between the defendants, it is apparent that the requested injunctive relief seeking reinstatement in the property he formerly owned is not directed at MERS, which was involved with Plaintiff's loan only to the extent it served as the nominee for the lender, Countrywide Home Loans, Inc. *See* Complaint in Foreclosure and attached Mortgage, Exhibit Q hereto. Nor does it appear to be directed at Bank of America Corp., which was not the lender and is not alleged to have had any ownership interest or any contact with Plaintiff or his former property.

Memorandum and Order (Dkt. 14).  He has alleged no facts to show that he would suffer irreparable harm in the absence of the extraordinary relief he seeks.  Moreover, it is apparent that he *can* be adequately compensated by damages, given that all of Plaintiff's claims seek only money damages, and none of the claims nor the prayer for relief requests injunctive relief. Indeed, Plaintiff's Complaint and his motion for a temporary restraining order fail to point to any claim that would entitle him to injunctive relief or that would provide the remedy of unwinding the eviction.

Finally, the remaining factors – harm to third parties and the public interest – favor denying the injunction.  A third party's rights, Fannie Mae, would be affected by the injunction, and the public interest is not served by permitting the federal courts to serve as an endless appeals process for settled state court foreclosures.

For all of these reasons, Plaintiff's motion should be denied.

## ARGUMENT

## I.  THE ANTI-INJUNCTION ACT PROHIBITS PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF.

Plaintiff was evicted from the subject property on May 6, 2011.  (Pl.'s Mem. at 7.) Plaintiff is proposing that the Court somehow order the reversal of the state court eviction order executed by the sheriff (see Exhibit J) and reinstate Plaintiff into the property.  (*Id.* at 7, 11.)

The Anti-Injunction Act, 28 U.S.C. § 2283 (the "Act"), expressly precludes Plaintiff's proposed injunctive relief.  Under the Act, a federal district court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283. The Act bars attempts to enjoin state court foreclosure proceedings. *See Smith v. Encore Credit Corp.*, 623 F. Supp. 2d 910, 919 (N.D. Ohio 2008) ("To the extent that the Smiths are asking the

federal district court to enjoin the foreclosure sale ordered by the state court, the federal district court is barred from providing that relief by the Anti-Injunction Act."). That Plaintiff seeks an injunction against the Bank and not the state court is of no moment, as the ultimate effect is the same. *Atl. Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970) ("It is settled that the prohibition of § 2283 cannot be evaded by addressing the order to the parties.").

The requested relief here is even more inappropriate because it does not seek to have this Court *stay* a foreclosure proceeding, but rather, seeks to have this federal court enter a mandatory injunction upon the state foreclosure court requiring it to *reverse* its order of possession and require the sheriff and Fannie Mae (neither of whom are before this Court) to put Plaintiff back into the property now that it is owned by Fannie Mae. Because Plaintiff's proposed injunctive relief would essentially order the state court to *undo* its foreclosure judgment, sheriff's sale, and eviction, it is prohibited by the Act.

## II. THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S COMPLAINT AND PLAINTIFF'S CLAIM FOR INJUNCTIVE RELIEF.

### A. *Rooker-Feldman* Prohibits Plaintiff's Proposed Injunctive Relief.

Even if the Court had authority to enter a mandatory injunction on a state court, it would be unable to do so in this particular case, because such relief is prohibited by the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine stands generally for the proposition that parties who have lost in state court and who are complaining of injuries caused by state court judgments rendered before the district court proceedings commenced, and which invite district court review and rejection of those judgments, are properly dismissed for want of subject-matter jurisdiction. *See, e.g., Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005)).

4

It is clear that *Rooker-Feldman* prohibits Plaintiff's current motion for reinstatement in the property following the state court foreclosure judgment, sale, and eviction.  The Sixth Circuit has expressly applied *Rooker-Feldman* in this situation.  In *Givens v. Homecomings Fin.*, 278 Fed. App'x 607 (6th Cir. 2008), the defendant lender foreclosed on the plaintiff's property, the sheriff conducted the foreclosure sale, and the state court issued an eviction order requiring the plaintiff to vacate the premises.  *Id*. at 608.  The plaintiff then brought federal and state claims in federal district court, "seeking an injunction barring the enforcement of the order of possession." *Id*.  The district court dismissed under *Rooker-Feldman*, and the Sixth Circuit affirmed, holding, "Because [the plaintiff] is effectively attempting to appeal from the state order granting possession to [the purchaser at the foreclosure sale], his suit was properly dismissed under *Rooker-Feldman*."  *Id*.

Similarly, the Court here cannot grant Plaintiff's proposed injunctive relief without reversing the state court foreclosure judgment, sale, and eviction.  While Plaintiff recites that his Complaint "is not an attack on the state court's judgment granting Countrywide a foreclosure" (Compl. ¶ 2) in an attempt to avoid the *Rooker-Feldman* doctrine, the mandatory injunction he seeks is plainly just that.  The eviction was a direct result of the foreclosure judgment and sale of the property, which is now in the possession of Fannie Mae.  It is disingenuous for Plaintiff to argue that he only wants to reverse the *eviction* and *not* the foreclosure judgment.  In order to be entitled to the injunctive relief he requests, Plaintiff would have to establish that he has a legal right to the property (*Hadix v. Caruso*, Case No. 4:92-CV-110, 2007 U.S. Dist. LEXIS 66530, *16-17 (W.D. Mich. Sept. 10, 2007)), which he cannot do without contesting and overturning the foreclosure judgment finding that he no longer has such a legal right.

Plaintiff's requested injunctive relief is, therefore, barred by *Rooker-Feldman*.

**B.** **Plaintiff's Claims Are Not Independent from the State Court Foreclosure Judgment.**

In an obvious attempt to avoid application of the *Rooker-Feldman* doctrine to his claims, Plaintiff asserts that his Complaint "is not an attack on the state court's judgment granting Countrywide a foreclosure." (Compl. ¶ 2.) Rather than openly attack the state court's foreclosure judgment, Plaintiff purports to allege "independent acts of fraud" relating to the affidavits and note filed in the state court action and the Bank's standing to foreclose. (*Id.*) In so pleading, Plaintiff clearly hopes to place himself within an exception to *Rooker-Feldman* created by the Sixth Circuit in cases such as *McCormick v. Braverman*, 451 F.3d 382 (6th Cir. 2006).

In *McCormick*, the plaintiff successfully argued that she was not attacking the state court judgment, but rather seeking damages from the defendants' alleged fraud and misrepresentations that led to the judgment. *Id.* at 392. The court did not apply *Rooker-Feldman*, holding, "Plaintiff does not claim that the state court judgments themselves are unconstitutional or in violation of federal law. Instead, Plaintiff asserts independent claims that those state court judgments were procured by certain Defendants through fraud, misrepresentation, or other improper means." *Id.*

In this case, however, Plaintiff has already raised all of his fraud allegations before the state court, which rejected them not once, but at least three times. Because the state court rejected Plaintiff's fraud allegations in rendering its judgment, Plaintiff is necessarily challenging the state court's judgment when he raises those very same allegations in this Court. In other words, Plaintiff is arguing that the state court got it wrong when it rejected his fraud allegations.

First, in his initial motion to dismiss the Bank's state-court foreclosure complaint, Plaintiff vigorously argued that the affidavit of Mark Bishop was fraudulent:

> The affidavit by Mark Bishop states he has personal knowledge that the copies of the mortgage and note attached to [the Bank's] complaint are true and accurate copies. . . . The fact that he would state in an affidavit that he has "personal knowledge" that the documents submitted with the complaint by [the Bank] are

> "true and original copies" when it so obvious that they have been substantially
> changed and altered only brings him in as a direct participant in the fraud that [the
> Bank] is attempting to perpetrate on both [Plaintiff] and this honorable court. By
> submitting such blatantly false documents in this case [the Bank is] attempting to
> bring this court into collusion in [its] fraudulent actions in an attempt to
> unlawfully take the property of [Plaintiff.]

*See* Motion to Dismiss dated March 12, 2009, at 2, attached hereto as Exhibit K. The state court

rejected these allegations and denied Plaintiff's motion, finding that Plaintiff "failed to offer any

evidence to support this claim." *See* Order dated March 27, 2009, at 2, attached hereto as

Exhibit L.

Next, undeterred, Plaintiff again moved to dismiss on the basis of fraud, this time

concerning the legitimacy of the Note and its assignment:

> [The Note] was not an original, but a masterful forgery which was fraudulently
> falsified and electronically altered. [The Bank did] not possess the note or notes,
> henceforth they have no standing and their attorney has no first hand knowledge
> of the facts . . . . Because [the Bank's] claims contain criminal fraud we cannot
> formulate a response and cannot determine or understand their request.

*See* Motion to Dismiss dated March 30, 2009, at 2, attached hereto as Exhibit M. The state court

rejected Plaintiff's arguments for the second time, stating, "Again, the Court finds that [Plaintiff]

has failed to offer any evidence to establish [his claims.]" *See* Order from April 15, 2009, at 2,

attached hereto as Exhibit N. Finally, when the Bank moved for summary judgment, the state

court heard oral arguments on April 20, 2009, where the Plaintiff rehashed his previously

rejected fraud allegations. For example, Plaintiff argued:

> That document [the Note] has been mechanically altered; it's been colored; it's
> been Xeroxed and is, obviously, a Xerox of a screen shot. I want to see the Note
> because, like I said, I don't want someone from Pakistan or Germany or China or
> someplace else, walking up my driveway with that Note 30 years later, saying,
> you owe me this amount of money. This is patently, patently unfair, your honor.

*See* Transcript from Summary Judgment Hearing at 31-32, filed by Plaintiff in his previous

action, 2:09-cv-00674-EAS-TPK, Dkt. 48-2, as exhibit to a motion to reconsider his request for

temporary restraining order to prevent the judicial sale, attached hereto as Exhibit E.  The state court rejected these and Plaintiff's other fraud allegations, stating, "[Y]ou haven't convinced me of the fraud at this point and I'm not even in a position to even deal with that.  You filed your motions on that and they were denied."  *Id*. at 34.; *see also* Order denying Plaintiff's motions, dated 4/21/09, attached hereto as Exhibit O.

In this case, Plaintiff's allegedly "independent" fraud claims are the very same claims Plaintiff already asserted to the trial court.  The Complaint rehashes Plaintiff's allegations regarding the Note and its assignment to the Bank (Compl. ¶¶ 13, 20-26), and alleges the affidavit signed by Mark Bishop was inaccurate, false, and made without personal knowledge, examination, or authority.  (Compl. ¶ 16-19.)  In making these "independent" allegations, Plaintiff fails to mention that he made the very same claims before the state court, which rejected each and every one of them.

Plaintiff's allegations of fraud and misrepresentation are, then, not "independent" at all. Having come before the Court with allegations rejected by the state court, Plaintiff is essentially asking the Court to conduct appellate review of the state court's rejection of those allegations. Such a request does not fall within the Sixth Circuit's independent claim exception.  *Cf. In re Smith*, 349 Fed. App'x. 12, 15 (6th Cir. 2009) ("[T]he 'source of the injury' in this case is the state trial court order that denied Smith access to DNA testing. That is, by complaining that the state trial court wrongfully denied him the DNA evidence because rejection of his petition was improper . . . Smith is 'complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment,' which is clearly barred by *Rooker-Feldman*.") (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291(2005)).  Because Plaintiff has

not alleged any claim independent from those resolved by the state court judgment, the *Rooker-Feldman* doctrine prevents the Court from exercising jurisdiction over Plaintiff's Complaint.

**III.    PLAINTIFF'S CLAIMS ARE BARRED BY *RES JUDICATA*.**

Even if *Rooker-Feldman* did not apply, Plaintiff's previous attempts to argue fraud and misrepresentation before the state court more than adequately demonstrate that Plaintiff's current claims are barred by *res judicata*.  As this Court found the first time Plaintiff attempted to raise claims relating to the state court action, Plaintiff's additional claims not expressly raised before the state court are nevertheless barred by *res judicata* because "an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were *or might have been* litigated in a first lawsuit."  *Miller v. Countrywide Home Loans*, 747 F. Supp. 2d 947, 960 (S.D. Ohio 2010) (quoting *Grava v. Parkman Township*, 73 Ohio St.3d 379, 381, 1995-Ohio-331, 653 N.E.2d 226, 229 (Ohio 1995)).

Because the foreclosure and eviction judgments originated in Ohio state court, the Court must apply Ohio *res judicata* principles.  *Miller*, 747 F. Supp. 2d at 959.  As this Court stated in Plaintiff's previous action:

> There is no doubt Ohio subscribes to the basic res judicata rule that a final, unappealed judgment on the merits in one action, even if erroneous, is not open to collateral attack in a second action, but can be corrected only by a direct review and that, left uncorrected, error in the first action does not deprive any of the original parties of the right to rely upon a plea of res judicata in a second proceeding on the same cause of action. Because his failure to appeal has rendered the foreclosure judgment final, this rule effectively bars claims based on Plaintiff's various complaints about the procedures, evidence, rulings, and outcome of that proceeding, itself.

*Id*. at 959 (citation omitted).  Here, Ohio's specific doctrine of claim preclusion bars Plaintiff's claims because all of those claims "aris[e] out of a transaction that was the subject matter of a previous action," namely, the foreclosure and eviction actions.  *Id*. (quoting *Nickoli v. Erie MetroParks*, 923 N.E.2d 588, 592 (Ohio 2010)).

Despite the broad array of legal claims Plaintiff pleads, the factual transactions or occurrences out of which these claims allegedly arise are the same: the events leading up to the Bank's foreclosure, the foreclosure and eviction actions themselves, and the evidence presented therein.  Defendants will address each count in turn.

In Count II, Plaintiff claims promissory estoppel based upon the Bank's failure to provide him with a loan modification while the foreclosure was pending.  (Compl. ¶ 44.)  Plaintiff has, however, already complained about the Bank's "workout program," stating that it "was nothing but puffery."  *See* Exhibit E, summary judgment transcript, at 6.  In addition, Plaintiff argued before the state court that the terms of his refinance with the Bank amounted to "predatory lending."  *Id.* at 28.  Thus, Plaintiff could have raised, and to some extent did raise, his loan modification claims before the state court.

In Count III, Plaintiff claims the Bank violated Ohio's Consumer Sales Practices Act "by proceeding to pursue a foreclosure action against Plaintiff."  (Compl. ¶ 49.)  If Plaintiff believed the state-court foreclosure action was "unfair, deceptive, and unconscionable," the state court itself was the proper forum for that argument.  Plaintiff did, in fact, vigorously dispute the legitimacy of the foreclosure action and the Bank's evidence presented therein, but the state court rejected those arguments, granted summary judgment for the Bank and denied Plaintiff's many motions.

In Count IV, Plaintiff alleges the Bank committed common law fraud in carrying out its foreclosure case and the evidence it presented therein.  But again, Plaintiff's allegations of fraud are not new to this case; as discussed above, he made these allegations in the state court, and the state court rejected them.

10

In Count V, Plaintiff alleges the Bank breached the covenant of good faith and fair dealing by "failing to approve him for a loan modification."  (Compl. ¶ 60.)  As discussed above with respect to the promissory estoppel claim (Count II), the time and place to have raised this issue was the state court foreclosure action.

In Count VI, Plaintiff alleges the Bank violated the Fair Debt Collection Practices Act ("FDCPA") by "engaging in false and misleading representations."  (Compl. ¶ 66.)  The proper place to dispute representations relating to the foreclosure was in the state foreclosure action itself, which is exactly what Plaintiff did during the summary judgment argument.[4]  In addition, this Court has already rejected Plaintiff's FDCPA claim and dismissed it with prejudice, and that rejection is *res judicata* as well.  *Miller*, 747 F. Supp. 2d at 958.[5]

In Count VII, Plaintiff alleges the Bank violated the Fair Credit Reporting Act ("FCRA") by "wrongfully, improperly, and illegally" reporting negative information to the credit rating agencies.  (Compl. ¶ 71.)  Whether the Bank's alleged reporting to these agencies was "wrongful, improper, and illegal" was necessarily resolved by the foreclosure judgment; if Plaintiff had been current on his debt obligations, there would have been no foreclosure and no negative reporting to credit rating agencies.

Count VIII, dubbed "bad faith," appears to be a superfluous repetition of the allegations in Count V.

---

[4]  *See* Exhibit E, summary judgment transcript, at 9-10 ("MR. MILLER: So under the Fair Debt Collection Practices Act, I have a right to have the debt validated before somebody can come to me and say, you know, you owe this. . . . THE COURT: All right, and the thing for you to have done was to seek that in discovery.  Did you do that?  MR. MILLER: Well -- THE COURT: This case was filed last August and they -- MR. MILLER: No, I didn't, your honor.")
[5]  Although Plaintiff's counsel has indicated to the court and counsel for Defendants that he will withdraw this claim, he has not done so to date, and thus, Defendants will address the FDCPA claim herein.

In Count IX, Plaintiff alleges Defendants wrongfully foreclosed on his property by providing false documents to the state court.  (Compl. ¶ 81.)  As already discussed, Plaintiff raised these arguments before the state court, where they were rejected.

In Count X, Plaintiff alleges the Defendants conspired to injure him.  (Compl. ¶ 84-88.) Although there are no specific allegations in this count, the allegations in the Complaint revolve solely around the Bank's foreclosure and eviction actions.

In Count XI, Plaintiff alleges the Bank violated Ohio's "Baby RICO" statute by engaging in "a pattern of corrupt activity and collection of unlawful debt."  (Compl. ¶ 90.)  Whether the Bank's collection of debt, *i.e.*, the foreclosure action, was unlawful was necessarily resolved when the state court rejected Plaintiff's allegations and granted the foreclosure judgment.

In Count XII, Plaintiff alleges the Bank's employees and agents, including affiants Mark Bishop (foreclosure affidavit) and Kimberly Dawson (assignment of the Note) "were engaged in a widespread fraud."  (Compl. ¶ 93.)  As discussed herein, Plaintiff's fraud allegations were raised repeatedly in the state court, and the state court rejected them.

In Count XIII, Plaintiff alleges the Bank violated the Real Estate Settlement Procedures Act ("RESPA") in its allocation of closing costs on his loan.  (Compl. ¶¶ 99-100.)  These claims could have been raised before the state court, and to the extent they were not, they are barred.

Finally, in Count XIV Plaintiff alleges the Bank "ousted Plaintiff from his residence illegally."  (Compl. ¶ 103.)  Clearly, the proper forum to dispute the legality of the eviction action was the foreclosure and eviction action itself.

The Sixth Circuit and this District consistently hold that claims such as these could or should have been brought as a part of state-court foreclosure or eviction proceedings.  *See Givens*, 278 Fed. App'x at 609 ("Givens's suit is also barred by the doctrine of *res judicata*.  As

discussed, Givens's arguments all come down to one premise: that JP Morgan Chase was not entitled to possession of the property in question. That issue, however, has already been litigated in the [state] courts."); *Hines v. Franklin S&L*, 2011 U.S. Dist. LEXIS 24500, at *12 (S.D. Ohio Jan. 31, 2011) ("I conclude that all of the same claims could and should have been presented in the state court foreclosure action, whether the claims arise out of state or federal law."); *Miller*, 747 F. Supp. 2d at 962 ("It therefore appears that Plaintiff here could have raised his TILA damages claim . . . in Countrywide's foreclosure action, thus making it 'a defense not raised' in that action and, under Ohio's rules of claim preclusion, a bar to Plaintiff's later TILA claim in this case."). Accordingly, all of Plaintiff's claims are barred by *res judicata*.

## IV.    PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF.

As a threshold matter, a preliminary injunction cannot issue here, because none of the Defendants owns or possesses the property. Rather, it is now owned by Fannie Mae, who is not a party and against whom no injunction can issue. More to the point, all of the factors used to determine whether preliminary injunctive relief is appropriate weight against Plaintiff's request.

A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948, at 129-130 (2d ed. 1995). A "federal court's authority to prevent harm – even irreparable harm – must always be linked to vindication of a party's legal right, and not simply to the fact of harm itself." *Hadix v. Caruso*, Case No. 4:92-CV-110, 2007 U.S. Dist. LEXIS 66530 (W.D. Mich. Sept. 10, 2007). Such injunctive relief is only appropriate if: 1) the plaintiff has established a substantial likelihood of success on the merits; 2) there is a threat of irreparable harm to the plaintiff; 3) issuance of the injunction would not cause substantial harm to others; and 4) the public interest is best served by granting injunctive relief. *Harding v. City of Toledo*, 433 F. Supp. 2d 867, 869 (N.D. Ohio 2006)

(citing *Chabad v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004)). In weighing these factors, the Court applies "a clear-and-convincing evidence standard." *Id.* "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000) (citation omitted). None of these factors favor granting a preliminary injunction.

A.    **The Defendants Lack the Power to Grant Plaintiff's Extraordinary Request, Because the Property Was Assigned to a Third Party, Fannie Mae.**

As noted in the Court's Conference Memorandum and Order following the informal conference with the parties, the Defendants do not own or possess the property. *See* Dkt. 14. Rather, the property was assigned to Fannie Mae on August 25, 2010, prior to the filing of the present action. *See* Exhibit I. Plaintiff has not shown that any of the Defendants before the Court is in a position to provide him with the relief he seeks, *i.e.*, to be put back into the house to which he no longer has a legal right. An injunction affecting Fannie Mae's rights in the property would therefore be *ex parte* and without notice, and a preliminary injunction may not issue binding it. *See* Fed. R. Civ. P. 65(a)(1) ("The court may issue a preliminary injunction only on notice to the adverse party."); *see also Parker v. Ryan*, 960 F.2d 543, 545 (5th Cir. 1992) (the "adverse party" is the party adversely affected by the injunction).[6]

B.    **Plaintiff Cannot Show Any Likelihood of Success on the Merits.**

Plaintiff cannot show that he is likely to prevail on any of his claims, nor does he show that if he *could* prevail on any of those claims, such a finding would result in his present possession of the property in question.

---

[6] Moreover, in order to obtain even a temporary restraining order against Fannie Mae, Plaintiff would have to come forward with "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damages will result to the movant before [Fannie Mae] can be heard in opposition" as well as an attorney's certification stating in writing what efforts were made to give notice [to Fannie Mae] and why it is not required." *See* Fed. R. Civ. P 65(b)(1). Plaintiff has not met either requirement, nor has Plaintiff named Fannie Mae in his Complaint.

At the threshold, Plaintiff has not established any link between the injunctive relief sought and a legal right that requires protection by this Court.  *See Hadix v. Caruso*, Case No. 4:92-CV-110, 2007 U.S. Dist. LEXIS 66530, *16-17 (W.D. Mich. Sept. 10, 2007); *see also* 13-65 *Moore's Federal Practice* – Civil § 65.22(1)(c) (3d ed. 2011) ("A preliminary injunction will not be granted in the absence of some actual or threatened violation of a legal right.").

Plaintiff has not even attempted to explain which, if any, of his claims could actually entitle him to the injunctive relief he is requesting – to be given possession of his former property, now owned by Fannie Mae.  Certainly none of his federal claims could do so, given that they relate to credit reporting (FCRA), debt collection (FDCPA), and closing costs (RESPA).  Even if injunctive relief were available under these federal claims, which it is not,[7] those acts would not provide a basis for reinstatement in the property Plaintiff formerly owned.

Similarly, none of his state law claims could entitle him to reinstatement in the house now owned by Fannie Mae.  Indeed, Plaintiff has not even alleged that he *has* a "legal right" to the property, and none of his state law claims seek a legal finding of his entitlement to the property.  By conceding that he is not challenging the underlying foreclosure judgment, Plaintiff has made it clear that there is no set of circumstances under which he could possibly have a legal right to the property *in the future*.  Thus, his request to reverse the eviction does not bear any connection to an actual legal right that could be vindicated by any of his claims.

Additionally, as discussed above in Section III, each of Plaintiff's claims is barred by *res judicata,* and for that reason, Plaintiff cannot show likelihood of success on the merits.  Even if the claims were not barred by *res judicata*, when each of Plaintiff's fourteen counts is considered

---

[7]  *Watkins v. Beneficial*, No. 1:10-CV-1999, 2010 U.S. Dist. LEXIS 112857, *10 n.6 (N.D. Ga. Sept. 2, 2010) (no injunctive relief under RESPA); *Kafele v. Lerner Sampson & Rothfuss, L.P.A.*, 62 Fed. Appx. 584 (6th Cir. 2003) (no injunctive relief under FDCPA); *Washington v. CSC Credit Servs.*, 199 F.3d 263 (5th Cir. 2000), (no injunctive relief under FCRA).

in turn, it is apparent that there no likelihood of success on the merits on any of them, and indeed, all of Plaintiff's claims are deficient as a matter of law.

### 1.   The Promissory Estoppel Claim Is Statutorily Barred and Wholly Conclusory.

"The doctrine of promissory estoppel comes into play where the requisites of contract are not met, yet the promise should be enforced to avoid injustice." *Olympic Holding Co., LLC v. ACE Ltd.*, 122 Ohio St. 3d 89, 96 (2009). "To be successful on a claim of promissory estoppel, 'the party claiming the estoppel must have relied on conduct of an adversary in such a manner as to change his position for the worse and that reliance must have been reasonable in that the party claiming estoppel did not know and could not have known that its adversary's conduct was misleading.'" *Id*. at 97. "[T]he elements of promissory estoppel are (1) a clear and unambiguous promise (2) upon which it would be reasonable and foreseeable to rely, and (3) actual reliance on the promise (4) to the detriment of the one who relied." *Interstate Gas Supply, Inc. v. Calex, Corp.*, 10th Dist. App. No. 04AP-980, 2006-Ohio-638, ¶ 105, 2006 Ohio App. LEXIS 575, at *58 (Feb. 14, 2006).

Nothing in the Complaint identifies the who, what, when, where or how of any promise that was made or identifies the terms of the supposedly promised loan modification. However, the specifics do not matter, because it is clear that in the context of mortgage loans, the Statute of Frauds requires all loan modifications to be in writing in order to be enforceable. Ohio Revised Code 1335.02(B) provides: "No party to a loan agreement may bring an action on a loan agreement unless the agreement is in writing[.]" The statute specifically covers mortgages *and* mortgage modifications. Ohio Rev. Code 1335.02(A)(3); *see also U.S. Surety Co. v. KeyCorp*, No. 1:05CV2337, 2007 U.S. Dist. LEXIS 58996, at *11 (N.D. Ohio Aug. 13, 2007). Therefore, oral agreements to modify a mortgage loan are not enforceable. *Id*.; *see also Lamkin v. First*

16

*Community Bank*, 10th Dist. No. 00AP-935, 2001 Ohio App. LEXIS 1450, at *20-23 (Mar. 29, 2001) (holding that alleged oral modification to mortgage was unenforceable under the statute of frauds, which requires contracts affecting interests in land be in writing).  Under *Olympic Holding*, the Statute of Frauds will bar both a breach of oral contract claim and a promissory estoppel claim.

Plaintiff's promissory estoppel claim thus fails as a matter of law and is unlikely to succeed on the merits.

### 2. The Ohio Consumer Sales Practices Act Does Not Apply to Home Loans or Modifications.

The Ohio Consumer Sales Practices Act ("CSPA") only applies to "consumer transactions" defined by Ohio Revised Code 1345.01(A), which do ***not*** include transactions between financial institutions and their customers.  Ohio Rev. Code 1345.01(A); *Reagans v. Mountainhigh Coachworks, Inc*., 117 Ohio St. 3d 22, 881 N.E.2d 245, 2008-Ohio-271, ¶33 ("As a general matter, transactions between financial institutions and their customers are exempted from the definition of a 'consumer transaction' subject to the Consumer Sales Practices Act."). "Financial institutions" include national banks.  Ohio Rev. Code 5725.01(A).  As financial institutions, Bank of America Corp. and Countrywide are not subject to the CSPA.  As such, Plaintiff's third count fails as a matter of law, and there is no likelihood of success on the merits.

### 3. The Common Law Fraud Claim Fails.

To establish fraud a plaintiff must allege facts showing:  "(1) a representation, (2) material to the transaction, (3) made falsely, with knowledge of its falsity, or with such reckless disregard for whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) that causes the other party injury."  *Roark v. Rydell*, 2007-Ohio-6873, ¶ 79*; see also Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972

(6th Cir. 2005) ("In complying with Rule 9(b), a plaintiff, at a minimum, must allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.").

A plaintiff must allege facts showing how the *plaintiff* relied upon the defendant's alleged misrepresentations. *See Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993). Yet here, Plaintiff did *not* rely upon the supposed misrepresentations, but rather, challenged the Bank's standing and the veracity of the affidavit and assignment in the state foreclosure action.

Moreover, Plaintiff cannot pursue a fraud claim based upon supposed false statements in affidavits or which were made before the state court. Indeed, in Ohio, there is absolute civil immunity for statements made by witnesses during judicial proceedings, and allegations amounting to perjury, subornation of perjury and conspiracy to commit perjury are not recognized for public policy reasons as bases for civil lawsuits. *Masek v. Marroulis*, 2007-Ohio-6159, ¶¶42-44. "This ban on civil liability for false statements applies even in cases where the party testifying knew his statements were false." *Id.; see also Morrow v. Reminger & Reminger Co. LPA*, 2009-Ohio-2665; *DeBrosse v. Jamison*, 1992 Ohio App. LEXIS 131, at *5 (Jan. 14, 1992) ("In Ohio, it has long been recognized that freedom of speech is essential in a judicial proceeding to ensure justice … judges, counsel, parties, and witnesses are absolutely immune from civil suits for remarks made during the course of and relevant to a judicial proceeding.").

This absolute witness privilege applies to statements made in affidavits. *Hershey v. Edelman*, 2010-Ohio-1992, ¶32 (parties are immune from civil suits for remarks made in connection with a civil action.). A recent decision from the United States District Court for the Northern District of Ohio applied the absolute witness immunity rule in a so-called "robo-signer" case similar to the present one. *Dawes v. BAC Home Loans Servicing LP*, Case No. 1:10-cv-

02637, Magistrate Report (N.D. Ohio April 27, 2011) (copy attached as Exhibit P) (recommending dismissal of a class action case that alleged slander of title where the mortgagee had filed a foreclosure action and submitted a "'robo-signed affidavit' without any personal knowledge of whether Defendant Countrywide was the holder of the Note," and finding that "such statements were made in the course of judicial proceedings and, therefore, cannot serve as the basis of Davis's claim.").  Plaintiff's claim similarly fails on the merits.

**4.     <ins>The Good Faith and Fair Dealing Claim Fails Because It Is Not an Independent Cause of Action, It Is Barred by the Statute of Frauds, and Plaintiff's Breach Precludes a Claim for Breach of Contract.</ins>**

Count V fails because: (1) there is no independent claim for breach of the covenant of good faith and fair dealing; (2) the claim is barred by the statute of frauds; and (3) Plaintiff's material breach of the note and mortgage preclude him from asserting a claim for breach of contract.

Under Ohio law, "there is no claim for breach of the implied covenants of good faith and fair dealing independent of a breach of contract action."  *MERS v. Mosley*, 8th Dist. App. No. 93170, 2010-Ohio-2886, ¶ 49.  Moreover, while the covenant of good faith and fair dealing can be used to interpret express contractual terms, for this to occur the Complaint would have to articulate those express terms and show how they were breached.  The Complaint fails to identify any term of the Note and Mortgage breached by defendant Countrywide, the other party the agreements.  In any event, under Ohio law, a party cannot recover under a contract that he has himself breached.  *City of Marion v. Hoffman*, 3d Dist. App. No. 9-10-23, 2010-Ohio-4821, ¶ 23. Here, Plaintiff breached the Note and Mortgage by failing to make payments. Therefore, he cannot succeed on the merits.

**5.     <ins>The FDCPA Claim Fails Because Plaintiff Has Waived It, the Defendants Are Not Debt Collectors, the Claim is Time-Barred, and It Was Already Dismissed with Prejudice.</ins>**

19

As a threshold matter, Plaintiff's counsel indicated at the informal conference that he is dropping this claim. It is thereby waived, and the Court need not consider it. Even if the Court were to consider this claim, it fails for numerous reasons.

The FDCPA applies to "debt collectors" – not "creditors" collecting their own debts, or to mortgage servicing companies. *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."); *Wells Fargo Bank, N.A. v. Favino*, Case No. 1:10-cv-571, 2011 U.S. Dist. LEXIS 35618, at *20 (N.D. Ohio Mar. 31, 2011); *Martin v. Select Portfolio Serving Holding Corp.*, 2008 U.S. Dist. LEXIS 16088, at *9 (S.D. Ohio Mar. 3 2008). Here, Countrywide, the only defendant alleged to have had any contact with Plaintiff, is not a "debt collector" subject to the FDCPA. Indeed, Plaintiff himself alleges that it is a "creditor," which places them outside the reach of the statute. (Compl. ¶ 64.)

Plaintiff's FDCPA claim is also time-barred. Claims under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k. The clock begins to run either when the foreclosure complaint is filed or when it is served. *See McNerney v. MERS, Inc.*, No. 09-cv-2625, 2010 U.S. Dist. LEXIS 82870, * 9-*11 (N.D. Ohio Aug. 13, 2010). Plaintiff's claims are based on the foreclosure action filed in 2008, more than one year prior to the instant action filed in May 2011. Even if the statute were to run from the time the affidavit was submitted in the state court action, Plaintiff would still be time-barred, because it was filed on March 2, 2009. (Compl. ¶ 15.)

Finally, this Court already dismissed this claim with prejudice. Plaintiff cannot show any likelihood of success with respect to the FDCPA claim.

**6.** **The FCRA Claim Fails Because Plaintiff Did Not Comply with the Requirements of the Statute.**

The Fair Credit Reporting Act ("FCRA") prohibits a person from furnishing information to a credit reporting agency "if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. 1681s-2(a). Here, Plaintiff has not established *who* reported *what information*, much less why that information was *inaccurate*.

Moreover, an FCRA claim under 15 USC. 1681s-2(b) also requires plaintiff's compliance with 15 USC § 1681i(a)(1) and (2). *Bridge v. Ocwen Fed. Bank*, 669 F. Supp. 2d 853, 861 (N.D. Ohio 2009). These provisions require the plaintiff to dispute the item with the credit bureau, and give the reporting entity the opportunity to correct the information. There is no allegation that Plaintiff actually followed these procedures here, and thus, the claim is barred. *Id*. at 861.

**7.** **Plaintiff's Bad Faith Claim Fails, Because There Is No "Bad Faith" Tort.**

"Ohio does not recognize a general tort of bad faith." *Infocision Mgmt. Corp. v. Found. for Moral Law Inc.*, Case No. 5:08-cv-1412, 2009 U.S. Dist. LEXIS 65867, at *19 (N.D. Ohio July 27, 2009). Therefore, this claim is not likely to succeed.

**8.** **Plaintiff's Abuse of Process Claim Fails to Allege Ulterior Purpose.**

A claim for abuse of process requires that the defendant use a lawsuit against plaintiff to accomplish an ulterior purpose. *Aames Capital Corp. v. Wells*, 2002-Ohio-1498, ¶¶ 36-39. Abuse of process requires the filing of a lawsuit to achieve goals *outside* of the lawsuit. *Id*. Filing a lawsuit to recover a judgment based on the claims in the complaint will not suffice. *Id*. "The Ohio Supreme Court further note[s] that 'there is no liability for abuse of process where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.'" *Dawes* at 18 (see Exhibit P) (citing *Yaklevich v. Kemp, Schaeffer*

21

*& Rowe Co.*, 68 Ohio St. 3d 294 (1994).  Here, Countrywide simply effectuated its stated

purpose of foreclosing on the property.  Thus, Plaintiff's claim is not likely to succeed.

### 9.    Plaintiff Fails to Adequately Allege Civil Conspiracy.

"Ohio defines civil conspiracy as 'a malicious combination of two or more persons to

injure another in person or property, in a way not competent for one alone, resulting in actual

damages.'"  *Roark v. Rydell*, 2007-Ohio-6873, ¶ 55.  "A civil conspiracy claim cannot succeed

without an underlying unlawful act."  *Id*.  Further, "[a] claim of civil conspiracy rests upon an

actual agreement to participate in a wrongful activity."  *Collins v. Nat'l City Bank*, 2003-Ohio-

6893, ¶ 30.

Count IX recites conspiracy elements, but does not allege that the Defendants entered

into an agreement to participate in unlawful activity, the date of the agreement or exactly who its

participants supposedly were, or that the Defendants participated in any underlying unlawful

activity in furtherance of the alleged conspiracy.  Indeed, the Complaint asserts that Countrywide

and Bank of America are "merged" (¶ 6), so obviously they could not conspire with each other,

and it fails to allege any conduct by MERS other than being the "nominee" for Countrywide

identified as the mortgagee on Plaintiff's loan and assigning the loan back to Countrywide at or

around the time of the state foreclosure action.  Moreover, as noted above in Section IV.B.3.,

conspiracy to suborn the perjury of a witness is not a recognized claim.  *Masek v. Marroulis*,

2007-Ohio-6159, ¶¶ 42-44.  Stated simply, Plaintiff's "conspiracy" claim has no merit and is

unlikely to succeed.

### 10.    Plaintiff Does Not and Cannot Allege the Elements of a "Baby RICO" Claim, Including the Existence of an "Unlawful Debt."

A claim under the Ohio Corrupt Activities Act ("OCAA," a/k/a "Baby RICO"), Ohio

Rev. Code 2923.31, *et seq.*, requires:  "(1) that conduct of the defendant involves the commission

of two or more specifically prohibited state or federal criminal offenses; (2) that the prohibited criminal conduct of the defendant constitutes a pattern; and (3) that the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise." *Patton v. Wilson*, 2003-Ohio-3379, ¶ 12.

A claim under the OCAA requires a "pattern" of corrupt activity.  "Pattern" is defined as "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event."  Ohio Rev. Code 2923.31(E).  Alleging one transaction involving two or more crimes is not sufficient.  *Arnold v. Petland, Inc.,* 2009 U.S. Dist. LEXIS 31377, *28 (S.D. Ohio Mar. 26, 2009) (a single scheme to defraud, even if involving multiple predicate acts over a period of time, does not establish a "pattern of racketeering activity"); *Pethtel v. Wash. County Sheriff's Office*, No. 1:05-cv-273, 2007 U.S. Dist. LEXIS 60105, *37 (S.D. Ohio Aug. 16, 2007) (allegations that "clearly focus on a single scheme with a single injury to a single victim" do not allege a "pattern of racketeering activity"); *Herakovic v. Catholic Diocese*, 2005-Ohio-5985, ¶ 36 ("These events, although many in number, emanate from a single event, the alleged attempt to conceal the child sex abuse and/or the predatory priest.").

There also must be a separate "enterprise."  An "enterprise" is a "group of persons associated together for a common purpose of engaging in a course of conduct."  *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 699 (6th Cir. 2000).  "An association-in-fact enterprise can be proven by showing (1) that the associated persons formed an ongoing organization, formal or informal; (2) that they functioned as a continuing unit; and (3) that the organization was separate from the pattern of racketeering activity in which it engaged."  *Id*.

These elements "require a certain amount of organizational structure which eliminates simple conspiracies from the Act's reach." *Id.* "That is, simply conspiring to commit a fraud is not enough to trigger the Act if the parties are not organized in a fashion that would enable them to function as a racketeering organization for other purposes." *Id.*

A "hallmark" of an enterprise is "its ability to exist apart from the pattern of wrongdoing." *Id.* The statute "requires separate legal entities as the 'person' and the 'enterprise'" and "a corporation cannot be named as the liable 'person' and simultaneously fulfill the 'enterprise' requirement as well." *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1489 (6th Cir. 1989) (affirming dismissal of RICO claim that failed to plead a separate enterprise); *Universal Coach, Inc. v. New York City Transit Auth.*, 90 Ohio App. 3d 284, 291 (1993).

The OCAA is also limited to the commission of certain designated crimes, which it refers to as "corrupt activity." Ohio Rev. Code 2329.31(I). Plaintiff identifies the supposed enterprise as a pattern of "corrupt activity" and the act of collection of "unlawful debt" is specifically defined in the OCAA. But under the OCAA, "'[u]nlawful debt' means any money or other thing of value constituting principal or interest of a debt that is legally unenforceable in [Ohio] in whole or in part because the debt was incurred or contracted in violation of any federal or state law relating to the business of gambling activity or relating to the business of lending money at an usurious rate." Ohio Rev. Code 2329.31(L).

Here, Plaintiff has not identified any designated statutes that were violated, much less that there was *pattern* of violations, as the OCAA requires To the contrary, Plaintiff complains about a single transaction—the foreclosure action. Even if that case involved multiple crimes, a single transaction does not suffice. Nor has Plaintiff identified an "enterprise," *i.e.* an organization with some hierarchy that existed apart from the alleged pattern of wrongdoing. The

factual basis for Plaintiff's Complaint – the underlying foreclosure, sale and eviction claims – simply do not fit into the requirements of an OCAA violation. It is unlikely to succeed.

### 11. The Negligent Supervision Claim Fails.

This claim fails as a matter of law. A prerequisite to bringing suit for negligent supervision is that "the employee is individually liable for a tort or guilty of a claimed wrong against a third person, who then seeks recovery against the employer." *Strock v. Pressnell*, 38 Ohio St. 3d 207, 217 (1988). If no action can be maintained against the employee, then "it is obvious any imputed actions against [the supervisor is] also untenable." *Id*.

Here, as discussed above in Section IV.B.3., no action can be maintained against the individual who signed the affidavit in Plaintiff's case due to the doctrine of witness immunity. *Morrow v. Reminger & Reminger Co. LPA*, 2009-Ohio-2665; *Masek v. Marroulis*, 2007-Ohio-6159, ¶¶ 42-44.. Because the individual employee cannot be individually liable, there can be no negligent supervision claim, and it is unlikely to succeed. *Strock*, 38 Ohio St. 3d at 217.

### 12. The RESPA Claim Is Time-Barred.

Count XIII, brought under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, alleges that "Defendants accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed" in violation of 12 U.S.C. § 2607 (Compl. ¶ 99.) Section 2607 prohibits accepting "any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed."

Although the RESPA claim fails to identify the charges at issue in any way, including their amount, when they were incurred, what they were ostensibly for, what they were actually for, or how they violated the statute, it is clear that the claim is necessarily time-barred. RESPA

has a one-year statute of limitations for private causes of action brought under § 2607.  *See* 12

U.S.C. § 2614.  The provision, like the statute itself, relates to "real estate settlement services" –

*i.e.*, charges surrounding the closing of a home loan.  *See* 12 U.S.C. § 2602(3).  Plaintiff closed

on his property in March of 2006.  (*See* Exhibit Q, Complaint in Foreclosure with attached

Mortgage and Note).  Plaintiff's RESPA claim is thus unlikely to succeed.

### 13.    The Wrongful Eviction Claim Fails, Because the Defendants Did Not Evict Plaintiff, and It Otherwise Fails to Allege Anything Improper.

Plaintiff's "wrongful eviction" count is not likely to succeed, because none of the

Defendants evicted Plaintiff.  Rather, his eviction was effectuated by Fannie Mae, the current

owner of the property.  (*See* Writ of Possession to Fannie Mae, Exhibit J.)  Plaintiff has not

indicated what procedures required for a forcible entry and detainer action under Ohio Revised

Code § 1923 were violated (Compl. ¶ 103) nor how Defendants could have violated them given

the fact that the eviction was effectuated by Fannie Mae and the Sheriff, not any of the

Defendants here.

### C.    Plaintiff Cannot Show Irreparable Harm.

Plaintiff's motion states that he "now faces imminent eviction from the Property."  (Mot.

¶ 23.)  In fact, Plaintiff was already evicted from the Property on May 6, 2011.  (Mot. ¶ 29.)  *See*

returned Order of Possession, Exhibit J.  As disclosed at the informal conference in advance of

the present motion, Plaintiff currently lives with his father.  Dkt. 14.

Plaintiff's only argument regarding irreparable injury under these circumstances is that

"if the Court does not issue a preliminary injunction enjoining Defendants and the Delaware

County Sheriff from continuing to lock out Plaintiff, Plaintiff will suffer irreparable harm of

being forced out of the family home.  Certainly, this is irreparable harm."  (Mot. at 10.)

But such relief has been denied in cases even *prior* to a threatened eviction.  *See Harding v. City of Toledo*, 433 F. Supp. 2d 867, 873-74 (N.D. Ohio 2006) (no irreparable harm shown where plaintiff seeks to prevent eviction despite "difficulty," "discomfort," and "distress" in being required to move from a home or apartment "one likes").  Here, the fact that the eviction has already taken place weighs all the more strongly in favor of denying the injunction.

Moreover, as discussed above, a federal court's authority to prevent injury "must always be linked to vindication of a party's legal right, and not simply to the fact of harm itself."  *Hadix v. Caruso*, Case No. 4:92-CV-110, 2007 U.S. Dist. LEXIS 66530, *16-17 (W.D. Mich. Sept. 10, 2007).  Here, Plaintiff has not shown that he has a "legal right" to the property which he is seeking to vindicate through this federal action.  Indeed, he is not asking to be reinstated in the property while this Court *determines* whether he has a legal right to the property.  His request to reverse the eviction does not bear any connection to the ultimate relief he could obtain from this Court, as evidenced by the fact that *none of his claims actually request anything other than monetary damages* and none of them seek to reverse the foreclosure judgment such that he could again have a present right of possession of the property.

Plaintiff has not established that he would be irreparably harmed in the absence of the injunctive relief, and his request for such injunctive relief should be denied.

### D.      The Remaining Factors Weigh Against Injunctive Relief

Plaintiff states that there would be "absolutely no harm to others" if the injunction were issued.  (Mot. at 10.)  However, this is not the case in light of the fact that a third party, Fannie Mae, owns the property and would have its rights adversely affected without opportunity to respond if an injunction requiring relinquishment of the property to Plaintiff were to issue.

Moreover, the public interest is not served by restricting the alienation of property, and interfering with state court proceedings, even after a full and fair opportunity to challenge

foreclosure and eviction, and even after many of the issues Plaintiff raises, were *already litigated and decided* in the state court.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiff's motion be denied in its entirety, with prejudice, and that the Court grant such other and further relief that the Court deems just.

Dated:  May 24, 2011

Respectfully submitted,

/s/ Tammy L. Adkins
Tammy L. Adkins (*pro hac vice*)
**MCGUIREWOODS LLP**
77 W. Wacker Drive, Ste. 4100
Chicago, Illinois 60601-1815
(312) 849-8100
(312) 849-3690 (fax)
tadkins@mcguirewoods.com

/s/ Scott A. King
Scott A. King (0037582), Trial Attorney
**Thompson Hine LLP**
2000 Courthouse Plaza, N.E.
Dayton, Ohio  45402
(937) 443-6560
(937) 443-6830 (fax)
scott.king@thompsonhine.com

*Attorneys for Defendants Countrywide Home Loans, Inc., Bank of America Corp. and Mortgage Electronic Registration Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2011, I electronically filed a copy of the foregoing *Response In Opposition to Plaintiff's Motion for Temporary Restraining Order* using the Court's CM/ECF system, which will send notice by electronic mail to: jsherrod@jumplegal.com (John Sherrod, Esq., counsel for Plaintiffs); and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: None.

/s/ Tammy L. Adkins
Tammy L. Adkins