IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANA J. MILLER | ) | CASE NO.: 2:11-cv-393 |
| | ) | |
| Plaintiff, | ) | JUDGE: SARGUS |
| | ) | |
| -vs.- | ) | |
| | ) | |
| COUNTRYWIDE HOME LOANS, INC. | ) | |
| Et al. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

Now comes Plaintiff, Dana J. Miller ("Plaintiff"), by and through undersigned counsel, and for his reply to Defendants' memorandum in opposition to Plaintiff's motion for temporary restraining order.

Plaintiff incorporates his motion for temporary restraining order in its entirety herein. A memorandum in support is attached hereto and incorporated herein by reference. Plaintiff requests an oral hearing on this motion.

Respectfully submitted,

**JUMP LEGAL GROUP, LLC**


    /s/ John Sherrod
JOHN SHERROD (0078598)
2130 Arlington Avenue
Columbus, Ohio 43221
614.481.4480
866.513.7315 fax
jsherrod@jumplegal.com

*Counsel for Plaintiff*

1

## Memorandum In Support

### I. Preliminary Statement

Defendants' 29 page memorandum in opposition a motion to dismiss/motion for summary judgment disguised as a memorandum in opposition to Plaintiff's motion for TRO. The only issue for this Court to consider is whether Plaintiff has satisfied his burden of proof, which he has done. Defendants' "everything but the kitchen sink" memorandum in opposition is overkill, and much of it is a red herring.

### II. The Anti-Injunction Act Does Not Apply

Defendants incorrectly assert, "Plaintiff is proposing that the Court somehow order the reversal of the state court eviction order executed by the sheriff and reinstate Plaintiff into the property." The Anti-Injunction Act holds that a district court may not grant an injunction to stay proceedings in a state court. 28 U.S.C. § 2283. There is no longer a proceeding in state court that Plaintiff seeks to stay at this point. The only proceeding involving Plaintiff is *this* action in the federal district court. In *this* case, Plaintiff has alleged that Defendants illegally and fraudulently set in motion litigation for a purported purpose in the state court, with a purported outcome, but with an ulterior motive. Plaintiff also alleges Defendants committed fraud. As Plaintiff makes abundantly clear in his complaint, this action is not an attack on state court proceedings. In fact, Plaintiff states in the complaint that the state court "got it right" based upon the information it had. The state court had no idea the information Defendants supplied it with was fraudulent.

Here, Plaintiff simply seeks to maintain the status quo while this litigation proceeds and the Anti-Injunction Act does not apply (nor does *Younger* abstention).

### III. *Rooker-Feldman* is inapplicable

The *Rooker-Felmdman* doctrine is not a panacea that federal district courts may use as a docket clearing mechanism, as so many defendants have luckily reaped the benefits of. When the holdings in *Rooker* and *Feldman* came down, the Supreme Court made it very clear that the doctrine was to be applied sparingly in district courts. The doctrine has instead been utilized all too frequently in foreclosure cases.

    a. **<u>*Rooker-Feldman* and the Northern and Southern Districts of Ohio</u>**.

At its most basic, the *Rooker-Feldman* Doctrine, named after the two cases from which it sprung, is the principle that lower federal courts do not have jurisdiction to review state court judgments. See *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.* 544 U.S. 280, 291 (2005) ("*Rooker* and *Feldman* exhibit the limited circumstances in which [the Supreme] Court's appellate jurisdiction over state court judgments precludes a United States district court from exercising subject matter jurisdiction in an action it would otherwise be empowered to adjudicate[.]").[1]

It is based on the congressional grant, in 28 U.S.C. §1257, of appellate jurisdiction over state court judgments to the United States Supreme Court and the grant of original jurisdiction over certain suits to United States district courts. E.g., § 1330; § 1331; § 1332. Read together, these statutes indicate that the Supreme Court's appellate jurisdiction over state court judgments is exclusive and the jurisdiction of the federal district courts is purely original.

Although the Supreme Court has never found a case to be barred by the *Rooker-Feldman* doctrine aside from the two for which it is named, lower federal courts, including this one, regularly employ an expansive version of the doctrine to dismiss federal actions. Courts in the

---

[1] District courts are concerned that plaintiffs may use the federal courts to collaterally attack state court judgments. This Sixth Circuit has noted this potential problem, but noted, "this is an inevitable byproduct of the Supreme Court's confining the scope of *Rooker-Feldman* in *Exxon Mobil*[.]" *Smith v. Encore Credit Corp. et al.*, 623 F. Supp. 2d 910 (N.D. Ohio 2008).

Sixth Circuit have routinely applied *Rooker-Feldman* to clear its dockets of burdensome foreclosure litigation.

The Northern and Southern Districts of Ohio have, on countless occasions, applied the Doctrine to cases brought by *pro se* litigants who complain that the state court "got their foreclosure wrong." ("the pro se cases"). In most of the pro se cases, the federal complaint asserts as a basic premise that the underlying mortgage loan obligation is invalid and the foreclosure action is void. See e.g., *Hutchins v. Bank of N.Y. Mellon* 2010 U.S. Dist. LEXIS 68026 (N.D. Ohio); *Firestone v. CitiMortgage, Inc.* 2010 U.S. Dist. LEXIS 65066 (N.D. Ohio); *Suggs v. U.S. Bank Natl. Assn.* 2010 U.S. Dist. LEXIS 62768 (N.D. Ohio).

For example, in the Northern District case of *Roache v. Huron Valley Fin.*, the court refused to grant plaintiff's motion for temporary injunction to stop a foreclosure eviction stating, "Plaintiff's proposed damages are caused by the state foreclosure, the sheriff's sale of the property, and her eventual eviction. [Defendant] did not act directly to cause this damage." 2010 U.S. Dist. LEXIS 46024 (N.D. Ohio).

In *Kline v. MERS, et al.*, the plaintiff alleged in federal court that the defendant in state court did not have standing to bring suit in state court because the assignment of the note and mortgage occurred after the defendant filed the foreclosure complaint. 2010 U.S. Dist. LEXIS 26666 (S.D. Ohio). Similarly, in dismissing the plaintiff's allegations in *Miles v. Chase Home Fin., LLC*, the Northern District stated, "In the present action, [plaintiff] directly attacks the state court's decision to permit the sale of this property in execution of the foreclosure judgment. All of the allegations in the complaint concern specific grievances that the law was incorrectly applied to plaintiff's case, and are clearly predicated on his belief that the state court was mistaken in rending its decisions against him." 2010 U.D. Dist. LEXIS 1853 (N.D. Ohio).

The holding in *Kafele v. Lerner, Sampson & Rothfusss, LPA*, 161 Fed. Appx. 487 (6th Cir. 2005) is not applicable here for the proposition that any time a homeowner that was foreclosed on in state court, the same homeowner is barred by *Rooker-Feldman* from seeking redress in federal court. *Kafele* should be limited to its unique facts. In *Kafele*, the homeowners purchased several rental properties by obtaining mortgages from lenders. The homeowners defaulted on their loans and defendants brought a foreclosure action against them. Defendants obtained foreclosure decrees and the properties were ordered sold. The homeowners, acting *pro se*, then brought a federal action. In dismissing the homeowners' complaint, the Sixth Circuit reasoned: "That the plaintiffs' claims are indeed 'inextricably intertwined' is evidenced from the fact that there is simply no way for this or any other court to grant relief without disturbing the judgments of foreclosure entered by the state court." *Id*. at 488. In applying the now defunct "inextricably intertwined" test, the Sixth Circuit in *Kafele* dismissed plaintiffs' complaint because the plaintiffs in that case sought to overturn the state court judgment. Here, as Plaintiffs seek monetary damages from Defendant, this Court *is* able to grant relief without disturbing the state court judgment.

In a nutshell, the pro se cases stand for the proposition that *Rooker-Feldman* applies to those cases where the ultimate source of plaintiff's injuries was the state court judgments themselves. Nowhere in the pro se cases that have been dismissed do the plaintiffs allege their injuries are actually the result of a defendant's fraud and chicanery. This case bears little if any resemblance to the pro se cases. Unlike the allegations in the pro se cases, Plaintiffs here clearly assert that the cause of their injuries **is Defendant's fraudulent and deceitful conduct**, not the state court judgments themselves. Plaintiffs assert that **Defendant** "act[ed] directly to cause this damage," not the common pleas court. *Roache v. Huron Valley Fin.*, *supra*. Unlike the majority of the pro

5

se cases, Plaintiffs here have made no allegation that the common pleas court incorrectly applied the law to their case, or that the common pleas court was mistaken in rendering judgment against them. Rather, Plaintiffs allege Defendant's fraud caused the common pleas court, unbeknownst to it, to render judgment against these Plaintiffs.

> b. **Plaintiffs' allegations are that Defendant was the source of their injury, not the common pleas court, thus *Rooker-Feldman* is inapplicable**.

Defendant argues that this Court lacks subject matter jurisdiction pursuant to *Rooker-Feldman*. *Rooker-Feldman* is a doctrine, however, with only limited application. *Coles v. Granville*, 448 F.3d 853, 857 (6th Cir. 2006). In both *Rooker* and *Feldman*, "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state court judgment and seeking review and rejection of that judgment." *Exxon Mobil Corp. v. Saudi Basic Ind. Corp.*, 544 U.S. 280, 290.

The Sixth Circuit has explained that the key inquiry in determining whether a claim falls within the scope of the *Rooker-Feldman* doctrine is the source of the injury which the plaintiff alleges in his or her federal complaint:

> If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). As the Sixth Circuit has explained, "The key point is that the source of the injury must be from the state court judgment itself, a claim alleging another source of injury is an independent claim." *Id*.

The Sixth Circuit has further admonished that the *Rooker-Feldman* doctrine "is not a panacea to be applied whenever state court decisions and federal court decisions potentially or actually overlap. *McCormick*, 451 F.3d at 395. Thus, the Sixth Circuit has concluded that

6

jurisdiction is proper if a plaintiff presents an independent claim in federal court, "albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Id*. (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).  In fact, the Sixth Circuit recently reversed a ruling that *Rooker-Feldman* barred claims (including a request for rescission of a mortgage loan) brought by a mortgagor against individuals involved in state mortgage foreclosure proceedings where the source of the injury was the defendants' conduct preceding the foreclosure decree.  *Brown v. First Nationwide Mortg. Corp.*, 531 Fed. Appx. 426 (6th Cir. 2006).  *See also Lawrence v. Welch*, 531 F.3d 364, 369 (6th Cir. 2008) (holding that claims that certain defendants committed fraud and misrepresentation in a state probate proceeding did not allege an injury caused by state court judgment and were not barred by *Rooker-Feldman*).

    The Sixth Circuit has proven not so quick to affirm dismissals of plaintiffs' claims under the guise of *Rooker-Feldman*.  For example, in *Smith v. Encore Credit Corp.*, 623 F. Supp. 2d 910 (6th Cir. 2008), plaintiffs lost their home in a state court foreclosure action and later alleged predatory lending practices.  In their federal complaint, plaintiffs alleged violations of the Homeowners Equity Protection Act, the Real Estate Settlement Procedures Act, and the Truth in Lending Act, among other things.  In declining to apply *Rooker-Feldman* as a bar to plaintiffs' claims, the Sixth Circuit noted that the plaintiffs asserted that plaintiffs' claims were:

> [I]ndependent claims against third parties where the source of the injury is not the state court foreclosure judgment itself but the alleged conduct of these particular parties leading up to and encompassing the refinancing transaction.  Because the source of injury is not the state court judgment, *Rooker-Feldman* does not bar adjudication of these claims in federal court.

    Likewise, in *Brown v. First Nationwide Mortgage Corporation, et al.*, 206 Fed. Appx. 436 (6th Cir. 2006), foreclosure proceedings were initiated against the homeowner in state court.

Later, the homeowner filed an action in federal district court against the companies, alleging they had engaged in wrongdoing in the foreclosure proceedings and in the parties' subsequent financial dealings.  The district court granted summary judgment for the companies.  On appeal, the Sixth Circuit again held that, because the homeowner claimed that the source of his injury was the action of the companies, not the foreclosure decree itself, *Rooker-Feldman* did not apply.  Plaintiffs in *Brown* alleged, as here, that the companies "used deceitful tactics" and improperly modified a final judgment in the state court.  *Id*. at 440.

Finally, in *Smith, et al. v. ABN AMRO Mortgage Group, Inc., et al.*, 2007 U.S. Dist. LEXIS 49708 (N.D. Ohio) (attached hereto as Exhibit "A"), federal defendants Chase Manhattan and Mortgage Electronic Registration Systems, Inc. filed a foreclosure action on the property in the Hamilton County Court of Common Pleas and eventually obtained summary judgment.  In federal court, the defendants argued that *Rooker-Feldman* applied as a bar to all of plaintiff's claims.  Noting that *Rooker-Feldman* is a doctrine with only limited application, the court found that *Rooker-Feldman* was not a bar.

Noting the *McCormick* admonishment that *Rooker-Feldman* is not a "panacea," and in refusing to apply *Rooker-Feldman*, the Southern District in *Smith* stated, "No where (sic) in plaintiffs' demand for relief, in either the original Complaint or the Amended Complaint is there a request for a return of the property to Plaintiffs."  *Id*. at *8.  While plaintiffs' "independent claims may deny a legal conclusion of the state court…this fact does not lead to a divestment of subject matter jurisdiction in the federal courts."  *Id*., quoting *McCormick*, 451 F.3d at 392.

Here, there can be no distinction between the facts of this case and the facts in *McCormick* and *Brown*.  As in *Brown*, Plaintiff alleges Defendants engaged in deceitful tactics in the state foreclosure action which ultimately led to judgment against Plaintiff.  Plaintiff alleges

8

the source of his injury are the actions of Defendants, not the foreclosure decree itself. Plaintiff makes this clear in his complaint when he states with particularity, that Plaintiff's complaint is not an attack on the state court judgment itself.

All of the above Sixth Circuit cases stand for the proposition that *Rooker-Feldman* does not in every foreclosure case stop a district court from exercising subject matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. Sixth Circuit precedent is clear that if, as here, a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction.

This Court enjoys subject matter jurisdiction and *Rooker-Feldman* is not applicable. Because this Court has subject matter jurisdiction, Plaintiffs' motion for preliminary injunction should be granted. Further, this Court has authority in any case to maintain jurisdiction of a case and to stay an eviction until the court can properly resolve threshold issues and the merits. *Cf. Governor of Kansas v. Kempthorne*, 516 F.3d 833, 845 (10th Cir. 2008).

Finally, in its entry granting some of Plaintiff's counts in the previous, related case (2:09-cv-00674), the Court stated:

> Here, Plaintiff is not just seeking to have this Court review and reverse, or vacate, or set aside the state-court foreclosure judgment and/or related orders, and he is not basing his claims on alleged errors or deficiencies in those proceedings alone. Rather, Plaintiff is seeking money damages[.]

IV. ***Res Judicata* is not applicable**

Defendants' argument that *res judicata* is applicable essentially restates its arguments that *Rooker-Feldman* bars jurisdiction. The fact of the matter is Plaintiff *did not* properly allege in a counterclaim, for example, in the state court action, that Defendants committed fraud, or that

9

Defendants in the state court action submitted a faulty affidavit and assignment in seeking judgment against Plaintiff.

Further, this Court in Plaintiff's previously filed, related lawsuit, stated, "Initially, these Defendants argue *res judicata* and collateral estoppels, but that is to put the care before the horse." Preclusion in federal litigation following a judgment in state court depends on the Full Faith and Credit Statute, 28 U.S.C. § 1738, which requires the federal court to give the judgment the same effect as the rendering state would. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373 (1985). As a result, a federal court, asked to give *res judicata* effect to a state court judgment, must apply the *res judicata* principles of the law of the state whose decision is set up as a bar to further litigation. *ED Systems Corporation v. Southwestern Bell Telephone Co.*, 674 F.2d 453, 457 (5th Cir. 1982).

There is no doubt Ohio subscribes to the basic *res judicata* rule that a final, unappealed judgment on the merits in one action, even if erroneous, is not open to collateral attack in a second action, but can be corrected only by a direct review and that, left uncorrected, error in the first action does not deprive any of the original parties of the right to rely upon a plea of *res judicata* in a second proceeding on the same cause of action. *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). Because Plaintiff failed to raise on appeal various complaints about the procedures, evidence, rulings, and outcomes of the state court proceeding itself, it would make sense that he cannot now make such arguments before this Court.

However, in Ohio the basic *res judicata* rule effectively has two parts, applicable in different ways depending on the circumstances. These two parts are claim preclusion and issue preclusion. *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St. 3d 59. Claim preclusion prevents subsequent actions, by the same parties or privies, based upon any claim arising out of a

10

transaction that was the subject matter of a previous action, whereas issue preclusion, or collateral estoppels, precludes the relitigation, in a second action, of an issue that had been actually and necessarily litigated and determined in a prior action that was based on a different cause of action.  *Ft. Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St. 3d 392, 395 (1998).

It is clear here that this case involves claim preclusion, not issue preclusion.  Defendants seek the broadest application of the *res judicata* bar so as to cover and all of Plaintiff's claims here, and *issue* preclusion will not.

The Ohio Supreme Court has said it is an absolute due process prerequisite to the application of collateral estoppels that the party asserting the preclusion prove the "identical issue was actually litigated, directly determined, and essential to the judgment in the prior action."  *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St. 3d 193, 201 (1983).  The filings and so forth that Plaintiff made in the state court do not demonstrate actual litigation and direct determination of any issues raised here by Plaintiff, beyond those actually embodied in the loan foreclosure judgment itself.  Thus, collateral estoppels, or issue preclusion, does not operate to bar any of Plaintiff's claims here that were not "identical…actually litigated, directly determined, and essential to the judgment" in the prior foreclosure proceeding.

What Defendants seek here is the very broad *res judicata*, *claim* preclusion bar embodied in Ohio's rule "that a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action."  *Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 382 (1995).  Consistent with this Court's previous ruling, none of Plaintiff's causes of action should be dismissed on the basis

of *res judicata*, therefore, *res judicata* is not a bar to Plaintiff's ability to seek injunctive relief at this point in the litigation.

V. **Plaintiff is entitled to injunctive relief**

    a. **Whether the property was actually "assigned" to a third party is not determinative**

This Court has the power to award injunctive relief – in this case a reparative injunction, against a party or non-party.  In other words, an injunction may be issued even absent the joinder of an otherwise necessary party.  *Raph v. Vogeler*, 696 A.2d 342 (1997).  For example, even though certain entities may be deemed necessary parties defendant in that the action should include them so that the court may completely adjudicate a controversy and put an end to the litigation, the plaintiff need not join them when they are nonresidents who are outside the court's jurisdiction, and when the plaintiff may obtain a substantial measure of protection by an injunction against those who can be served with process.  *Thomas v. Allis*, 389 S.W.2d 109 (Tex. Civ. App. Tyler 1965).  In any event, the remedy for the alleged necessary party after an injunction issues is to file a motion to vacate said injunction.  *Thomson v. Talbert Drainage Dist.*, 336 P.2d 174 (4th Dist. 1959); *Green v. Hood*, 98 So. 2d 488 (Fla. 1957).

Also, as noted above, this Court has the power to retain jurisdiction over this matter irrespective of other issues, to resolve fringe issues and so forth.

    b. **Likelihood of success on the merits**

Again, Defendants treat this portion of its memorandum contra as no less than a motion to dismiss/motion for summary judgment, which is not proper at this stage of the litigation.  These are factors to be balanced, and not prerequisites to be met.  Whether Plaintiff will be successful or not on any one of his counts is anyone's guess, and the Court at the preliminary injunction stage is not required to predict the outcome on the merits with certainty.  *Ross-Simons of*

*Warwick, Inc.*, 102 F.3d 12 (1st Cir. 1996).  The granting of preliminary injunctive relief can be based upon a "fair chance" for success on the merits or the existence of questions serious enough to require litigation.  *Gorbach v. Reno*, 179 F.3d 1111 (9th Cir. 1999).

It has been said that likelihood of success and the balance of hardships are the extremes of the continuum, and if the balance of harm is sufficiently one sided, a movant at the preliminary injunction stage may not even be required to prove that he is more likely to prevail than not.  *Avedisian v. Holcomb*, 853 F.Supp. 185 (E.D. Va. 1994).  Here, one of Defendants' primary arguments is that it no longer holds an interest in the property because it "assigned" its interest to Fannie Mae.  If that is the case, Defendants cannot argue that they will be harmed **at all** if the injunction issues.  As stated before, this Court has authority to issue the injunction here even if certain alleged necessary parties have not yet been joined.

Furthermore, the likelihood of success that need be shown will vary inversely with the degree of injury Plaintiff will suffer absent an injunction.  *Pita Delight, Inc. v. Salami*, 24 F. Supp. 2d 795 (E.D. Mich. 1998).  Again, here, Plaintiff is living in his father's spare bedroom, and his cat is likely dead because he was forced to leave it when he was locked out.  Defendants assigned all of their interest to Fannie Mae, so it is not suffering *any* harm, let alone *irreparable* harm.

    c.  **Plaintiff demonstrates irreparable harm**

Defendants' argument is that Plaintiff is not suffering irreparable harm because he has already been evicted.  This is a strange argument.  At any rate, as noted above, the Court has inherent power to grant reparative injunctive relief.  Plaintiff has been wrongfully locked out of his family home, which he has lived in for years.  This is irreparable harm, and there is no adequate remedy at law other than to permit Plaintiff to return to his home.

### d. No third party harm

Defendants brush over the factor which is the factor that is weighed **directly** against the likelihood of success on the merits. For whatever reason, Defendants admit "Fannie Mae… would have its rights adversely affected without opportunity to respond if an injunction requiring relinquishment of the property to Plaintiff were to issue." Why do Defendants herein care if Fannie Mae's rights are adversely affected? Regardless, it is clear *Defendants'* interests herein are not harmed one iota. For this reason, the Court need not even consider the likelihood of success on the merits.

### e. Public Policy

Public policy weighs in favor of granting injunctive relief in this case. Public policy does not dictate that homeowners should be locked out of their family homes after a bank has committed fraud.

## VI. Conclusion

Accordingly, based upon the foregoing, Plaintiff respectfully requests that the Court grant his motion for temporary injunction.

## II. Law and Argument

A reparative injunction prevents future harmful effects of past acts and requires the defendant to restore the plaintiff to a pre-existing condition to which plaintiff is entitled. An injunction may be issued even absent the joinder of otherwise necessary parties. *Raph v. Vogeler*, 696 A.2d 342 (1997). For example, even though certain entities may be deemed necessary parties defendant in that the action should include them so that the court may completely adjudicate a controversy and put an end to the litigation, the plaintiff need not join them when they are nonresidents who are outside the court's jurisdiction, and when the plaintiff may obtain a substantial measure of protection by an injunction against those who can be served with process. *Thomas v. Allis*, 389 S.W.2d 109 (Tex. Civ. App. Tyler 1965).

A court has discretion to grant an injunction without joining a necessary party, and the necessary party may attack the decree by filing a motion to vacate it. *Thomson v. Talbert Drainage Dist.*, 336 P.2d 174 (4th Dist. 1959).

## VII. Plaintiff demonstrates irreparable harm

Defendants' argument is that Plaintiff is not suffering irreparable harm because he has already been evicted. This is a strange argument. At any rate, as noted above, the Court has inherent power to grant reparative injunctive relief. Plaintiff has been wrongfully locked out of his family home, which he has lived in for years. This is irreparable harm, and there is no adequate remedy at law other than to permit Plaintiff to return to his home.

## VIII. No third party harm

Defendants brush over the factor which