IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANA MILLER | ) | CASE NO.: *2:11-cv-393* |
| 11665  Center Village Road | ) | |
| Galena, Ohio 43021 | ) | JUDGE: *SARGUS* |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE: |
| | ) | |
| -vs.- | ) | |
| | ) | |
| COUNTRYWIDE HOME LOANS, INC. | ) | |
| c/o Statutory Agent CT Corporation | ) | |
| System | ) | |
| 1300 East 9th Street | ) | |
| Cleveland, Ohio 44114 | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| BANK OF AMERICA, CORP. | ) | |
| c/o Statutory Agent CT Corporation | ) | |
| System | ) | |
| 1300 East 9th Street | ) | |
| Cleveland, Ohio 44114 | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| MORTGAGE ELECTRONIC | ) | |
| REGISTRATION SYSTEMS, INC. | ) | |
| c/o Statutory Agent CT Corporation | ) | |
| System | ) | |
| 1300 East 9th Street | ) | |
| Cleveland, Ohio 44114 | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF DANA MILLER'S MOTION FOR AN EMERGENCY TEMPORARY INJUNCTION OF FORECLOSURE EVICTION

Now comes Plaintiff, Dana Miller ("Plaintiff"), and for his motion for an emergency

temporary injunction of the foreclosure eviction, which is occurred on May 6, 2011.

A memorandum in support is attached hereto and incorporated herein by reference. Accordingly, for the reasons set forth in the attached memorandum in support, Plaintiff respectfully requests that this Court enter an emergency order staying the continuance of the eviction and permitting Plaintiff to return to his home.

Respectfully submitted,

JUMP LEGAL GROUP, LLC

_____ /s/ John Sherrod
JOHN SHERROD (0078598)
2130 Arlington Avenue
Columbus, Ohio 43221
614.481.7231
866.561.7315 fax
jsherrod@jumplegal.com

*Attorney for Plaintiff*

2

## Memorandum in Support

### I. Factual Background

1. Countrywide, through its counsel, foreclosed on Plaintiff and the Property by way of a lawsuit filed in the Delaware County Court of Common Pleas carrying case number 08 CV E 08 1170. ("The Foreclosure Action"). The Foreclosure Action was captioned *Countrywide Homes Loans, Inc. v. Dana J. Miller, et al*. Prior to The Foreclosure Action, Plaintiff had agreed to pay Countrywide, pursuant to a 30 year note and mortgage, a copy of which were both attached to Countrywide's complaint in The Foreclosure Action. At some point in time, Plaintiff pursued Countrywide to permit him to enter into a loan modification so that he could continue to faithfully pay on the note and mortgage covering the Property. At some point in time, Plaintiff pursued Countrywide to permit him to enter into a loan modification so that he could continue to faithfully pay on the note and mortgage covering the Property.

2. On May 6, 2011, Plaintiff filed a civil complaint against Defendants alleging that the foreclosure on the Property was occasioned by multiple acts of fraud on the part of Defendants, among other things. The complaint in this case is not an attack on the state court's judgment granting Countrywide a foreclosure. Plaintiff is not complaining to this Court about the decision the state court made in granting Countrywide a foreclosure. Instead, this complaint alleges independent acts of fraud, among other things, against Defendants. Whether the underlying case in the Delaware Court of Common Pleas was a foreclosure case, or a personal injury case, for example, Defendants have engaged in **independent** acts of fraud and deceit that are actionable in this Court.

3

3. Countrywide attached to the complaint an alleged true and accurate copy of the original mortgage covering the Property. ("the Mortgage"). The Mortgage purported that MERS was the mortgagee.

4. Countrywide also attached to the complaint a copy of the original note covering the Property. ("the Note"). Plaintiff executed the Note in favor of Countrywide.

5. There was nothing attached to the complaint demonstrating that Countrywide had any interest, legal or otherwise, in the Mortgage.

6. On March 2, 2009, Countrywide filed a motion for summary judgment.

7. Along with its motion for summary judgment, Countrywide filed an affidavit in support. ("the Affidavit"). Mark Bishop, the alleged "1st Vice President" of Countrywide, attested that he had "personal knowledge" of Plaintiff's account, and that he had "examined the loan account of Dana J. Miller and that said account is under [his] supervision, [and] that there is presently due a principal balance of $268,681.63[.]"

8. Upon information and belief, the Affidavit is inaccurate in many respects. Upon information and belief, Mr. Bishop did not have "personal knowledge" of Plaintiff's account, nor did he "examine" Mr. Miller's account in any respect before declaring Plaintiff to be in default.

9. By giving Mr. Bishop the title of "1st Vice President" Countrywide meant to mislead the Plaintiff and Court in The Foreclosure Action into believing he was a person with the knowledge and authority to make the statements he did in the Affidavit, and thus not question the validity of it. Instead of being called a "1st Vice President," Mr. Bishop should realistically been given the title, "Affidavit Signer."

4

10. Countrywide knew when it filed the Affidavit that it was false, and it provided it to the court in the Foreclosure Action and to Plaintiff anyway, so that the court in the Foreclosure Action and Plaintiff would rely upon it.  Countrywide also provided the Affidavit to the court in The Foreclosure Action so that it could improperly foreclose on Plaintiff and the Property.

11. On March 25, 2009, through its counsel, Countrywide filed a response to the various motions that Plaintiff had filed in The Foreclosure Action, as well as an alleged assignment ("the Assignment") purporting to assign the Mortgage from Defendant MERS to Countrywide.

12. In its response, Countrywide's counsel stated that "Defendant's [Plaintiff in this case] motion sounds like a late night television infomercial decrying the modern lending system," and his filings are a "militia-style response."[1]

13. The Assignment that Countrywide presented to the court in The Foreclosure Action was a sham and a fraud.

14. Kimberly Dawson, interestingly also a "1st VP" or MERS as nominee for Countrywide, executed the Assignment, which purported to assign the Mortgage from MERS, as nominee for Countrywide, to *Countrywide*.  Notwithstanding the obvious impracticability of assigning the Mortgage essentially from Countrywide to Countrywide, upon information and belief, there is nothing in existence appointing Ms. Dawson as a "1st VP" of anything, let alone the "1st VP" of MERS.

---

[1] Notwithstanding that there is not a single "late night television infomercial decrying the modern lending system" in existence, anywhere, the Court overruled all of Plaintiff's alleged "militia-style" motions.  The Court likely did not deny Plaintiff's motions because they resembled an infomercial or because they were "militia-style," however.

15. Upon information and belief, Ms. Dawson received no wages from MERS, no W2 from MERS, no salary from MERS, no bonus from MERS – nothing from MERS. Ms. Dawson was not an employee or officer of MERS, and thus she had no authority, actual or otherwise, to assign the Mortgage from any entity, to any entity.

16. Countrywide knew the Assignment was false and untrue when it provided it to Plaintiff and the court in The Foreclosure Action. Countrywide hoped Plaintiff and the court in The Foreclosure Action would rely on its false and untrue Assignment so that it could foreclose on Plaintiff and the Property.

17. Likewise, Defendant MERS knew or should have known the Assignment was false and untrue. MERS also intended for Plaintiff and the court in The Foreclosure Action to rely on the Assignment so it could assist Countrywide in foreclosing on Plaintiff and the Property.

18. The entire Foreclosure Action noted was contaminated by the fraud of Defendants. As a result of that fraud, Defendants were permitted, under color of law, to take the Property away from Plaintiff.

19. On April 20, 2009, the court in the Foreclosure Action granted Countrywide's motion for summary judgment, in express reliance on the faulty Affidavit and Assignment.

20. As a result of the judgment Countrywide obtained against Plaintiff, the Property sold at sheriff's auction on August 25, 2010.

21. The court in The Foreclosure Action confirmed the sale on November 24, 2010.

22. On April 7, 2011, Countrywide filed a praecipe for writ of possession.

23. Plaintiff now faces imminent eviction from the Property.

24. Throughout the period of time The Foreclosure Action was pending in the common pleas court, and well before that time, Plaintiff believed Countrywide was working with him in good faith to enter into a loan modification.

25. Countrywide requested from Plaintiff the same financial paperwork over and over again. Countrywide would always, like clockwork, respond to the submission of these documents by advising Plaintiff he had forgotten certain documents or otherwise did not provide them.  This was simply untrue.

26. In response, Plaintiff would make every effort to comply with Countrywide's allegations that he did not provide the required financial documentation.

27. In reality, Countrywide at all relevant times had all of the financial documentation from Plaintiff that was necessary to make a determination of whether or not to offer him a loan modification.  Countrywide's ulterior motive was always to string Plaintiff along so that it could ultimately foreclose on the Property.

28. The efforts on the part of Countrywide and by extension Bank of America to lead Plaintiff to believe he would be approved for a loan modification, with the ulterior motive of foreclosing on the Property, were in bad faith.

29. On May 6, 2011, Defendants evicted Plaintiff from the Property, his family home.

30. Plaintiff is now homeless and will continue to be homeless if the eviction stays in effect.

31. Now that Plaintiff has been evicted, upon information and belief, Defendants will put the Property on the market for sale, where it will likely sit for possibly years.

32. During the time the Property is listed for sale, there is a high likelihood of vandalism of the Property, and a high likelihood the Property will fall into disrepair.

33. When the vandalism and disrepair causes the Property to ultimately sell for less than it otherwise would have, the deficiency that Plaintiff faces will be unnecessarily increased.

## II. Law & Argument

### a. Local Rule 65.1

Local Rule 65.1 provides as follows:

> **Temporary Restraining Orders and Preliminary Injunctions.** (a) Procedure for hearing. In most cases the Court will not hear or rule on any application for a temporary restraining order or a preliminary injunction until after the Court holds an informal preliminary conference with all parties. Further, proceedings in respect of the application will be determined at the conference. The trial attorney for the applicant shall obtain, from the office of the judge to whom the action is assigned, a date and time for the informal conference and shall immediately notify counsel for the adverse party, if known, or if not known, the adverse party, that the application has been filed or is to be filed and the date, time and location of the conference. The trial attorney shall also comply with the service requirements of subsection (b). (b) Form of and Service of Applications. Applications for temporary restraining orders or preliminary injunctions shall be made in pleadings separate from the complaint and in accordance with this Rule. Applications shall be accompanied by a certificate of the trial attorney or other proof satisfactory to the Court that: (1) The applications and all other pleadings filed in the action have been served upon the adverse party's attorney[.]

Immediately upon learning who the presiding Judge is over this case, counsel for Plaintiff contacted the chambers of said Judge's chambers in order to set up a preliminary conference. Plaintiff's counsel notified Countrywide's foreclosure counsel via email of the filing of this motion, and advising will keep him abreast of any hearing(s) that is set by the Court. (See copy of sent email, Exhibit "A"), and has also contacted opposing counsels via email to determine convenient dates and times to hold a preliminary conference. (See copy of sent email, Exhibit "B"). Further, counsel for Plaintiff has served Countrywide's counsel with both the complaint and this motion for preliminary injunction, via email. (See affidavit of Counsel, attached hereto

as Exhibit "C"). The remaining Defendants' statutory agents have been served with a copy of the complaint.

### b.  Standard for Preliminary Injunctive Relief

A preliminary injunction is an equitable remedy the purpose of which is to maintain the relative positions of the parties until proceedings on the merits can be conducted. *University of Texas v. Camenisch* (1981), 451 U.S. 390, 395. When a district court is asked to issue a preliminary injunction, it does not consider the merits of the case, but rather balances four factors in determining whether to issue the injunction. These well established factors are:

> (1) The likelihood that the party seeking the preliminary injunction will success on the merits of the claim;
>
> (2) Whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief;
>
> (3) The probability that granting the injunction will cause substantial harm to others; and
>
> (4) Whether the public interest is advanced by the issuance of the injunction.

*Vittitow, et al. v. City of Upper Arlington, et al.* (6th Cir. 1995), 43 F.3d 1100, 1108-09. The 6th Circuit has said that these factors are not prerequisites to be met, but factors to be balanced. *In re. DeLorean Motor Co.* (6th Cir. 1985), 755 F.2d 1223, 1229.

As to the first factor, the party requesting the injunction need not show a strong likelihood of success on the merits, nor a substantial likelihood of success, but must merely show that the merits of the case present a sufficiently serious question to justify further investigation of the merits. *Id.* at 1230.

Here, Plaintiff has alleged Defendants' practices in prosecuting the foreclosure action in the Delaware County Court of Common Pleas were fundamentally lacking and did not comport

with legal requirements.  Plaintiff alleges that Defendant's employees provided documents to the Delaware County Court of Common Pleas that were fraudulent.  The entire foreclosure action was contaminated by the fraud of Defendants.  Attorneys general in all 50 states have begun an investigation in the practices of banks and their law firms with regard to foreclosure prosecutions.  The merits of this case "present a serious question to justify further investigation of the merits."

As to the second factor, if the Court does not issue a preliminary injunction enjoining Defendants and the Delaware County Sheriff from continuing to lock out Plaintiff, Plaintiff will suffer the irreparable harm of being forced out of the family home.  Certainly, this is irreparable harm.

As to the third factor, if the Court grants Plaintiff a preliminary injunction, there will be absolutely no harm to others, including Defendants.  The reality is if the eviction and lock out continue, the home in question will be put on the market for sale, and it will likely sit for years in the current depressed real estate market.  Any claim by Defendants that they will be harmed if the foreclosure eviction does not proceed is disingenuous.

As to the final factor, the public interest is served by granting Plaintiff a preliminary injunction.  Foreclosure proceedings all over the country are being closely scrutinized by judges and the attorneys general.  The public interest is not served if Plaintiff is evicted and it is later determined that Defendants foreclosed upon this home illegally and fraudulently.

### c.  <u>Plaintiff has posted a bond</u>

The amount of an injunctive bond is largely within the discretion of the district court. *Roth v. Bank of the Commonwealth* (6th Cir. 1978), 583 F.2d 527.  The 6th Circuit has repeatedly held that the district court possesses the discretion to issue injunctive relief without the posting of

a bond.  See *Moltan Co. v. Eagle-Picher Industries, Inc.* (6th Cir. 1995), 55 F.3d 1171, 1176;

*Roth v. Bank of the Commonwealth*, (6th Cir. 1978), 583 F.2d 527, 539; *Urbain v. Knapp Bros.*

*Mfg. Co.* (6th Cir. 1954), 217 F.2d 810, 815-16, *cert. denied*, 349 U.S. 930 (1955).

The bond is a contract in which the court and the applicant agree to the bond amount as

the price of the wrongful injunction.  As such, the amount of the security bond rests in the sound

discretion of the district court.  This Court has discretion to grant Plaintiffs their requested relief

even without the posting of a bond under Fed.R.Civ.P 65(c).   Here, Plaintiff has posted a bond

of $100.00.

**III.** **Conclusion**

Accordingly, based upon the foregoing, Plaintiff respectfully requests that this Court enter a

preliminary injunction enjoining the continued lock out of Plaintiff.

Respectfully submitted,

**JUMP LEGAL GROUP, LLC**

_/s/ John Sherrod_
JOHN SHERROD (0078598)
2130 Arlington Avenue
Columbus, Ohio 43221
614.481.7231
866.561.7315 fax
jsherrod@jumplegal.com

*Attorney for Plaintiff*

11

**<u>Certificate of Service</u>**

A copy of the foregoing  was delivered to all counsel of record on ~~May 6, 2011~~ May 6, 2011, and a copy of this re-filed motion was delivered to all parties of record, via the Court's ECF system, this 1st day of June, 2011.

_____

John Sherrod